NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

KELLY B., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, L. L., J. L., *Appellees*.

No. 1 CA-JV 14-0246

FILED 3-5-2015

Appeal from the Superior Court in Maricopa County
No. JD510936
The Honorable Karen L. O'Connor, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Michael Valenzuela
*Counsel for Appellee*

**MEMORANDUM DECISION**

Presiding Judge John C. Gemmill delivered the decision of the Court, in which Judge Kenton D. Jones and Judge Donn Kessler joined.

**G E M M I L L**, Judge:

¶1        Kelly B. ("Mother") appeals the juvenile court's order terminating her parental rights to her daughter, L.L., and son, J.L. (collectively, "the children").  Mother argues that there was insufficient evidence to support the rulings.  For the following reasons, we affirm.

¶2        Mother, 33 years old, is the biological parent of her six-year-old daughter, L.L. and two-year-old son, J.L.  Mother has a long history of methamphetamine use starting at the age of 21.  She acknowledged using the drug every day until she became clean in April 2008.  Mother relapsed in December 2012, resuming daily use.  Mother has previously lost custody of four other children who are not subject to this severance dispute.

¶3        On March 24, 2013, Mother was caught trespassing by the Scottsdale Police Department at the home of a recently deceased person. She confessed to burglarizing the home and selling the goods at pawn shops in Mesa, Arizona.  Police found Mother's friend and both children waiting in Mother's rental car outside of the home.  After police conducted a search incident to Mother's arrest, they recovered methamphetamine and drug paraphernalia from the vehicle.  The Arizona Department of Child Safety ("DCS")[1] took the children into temporary physical custody that same day. On March 28, 2013, DCS filed a petition alleging that the children were dependent because Mother was unable to care for them due to substance abuse and because there was no other person willing or able to care for them.  The State charged Mother with one count of second-degree burglary and two counts of trafficking in stolen property.

¶4        The court found the children dependent on May 9, 2013 and approved an initial case plan of family reunification.  The court notified Mother that DCS would offer various substance abuse and parenting services and warned her that failure to cooperate with those services may lead to the loss of her children forever.

---

[1] Child Protective Services ("CPS") was formerly a division of the Arizona Department of Economic Security ("ADES").  Effective May 29, 2014, the Arizona legislature repealed the statutory authorization for creation of CPS and for ADES's administration of child welfare and placement services under title 8, and the powers, duties, and purposes from those entities were transferred to the newly established DCS. *See* 2014 Ariz. Sess. Laws 2d Spec. Sess., Ch. 1, §§ 6, 20, 54.  For simplicity, our references to DCS in this decision encompass both ADES and the former CPS, as appropriate.

¶5           DCS requested that Mother participate in random urinalysis and hair follicle drug testing through TASC and warned her that a missed test was considered a positive test for drugs.  On March 29, 2013, Mother's hair follicle test results were positive for methamphetamine, although her urinalysis was clean.  Mother refused to submit to further testing until after mediation.  After mediation in May 2013, however, Mother continued to decline testing until July 16, 2013 at which time her urinalysis returned a negative result.  Between March 29, 2013 and January 1, 2014, Mother participated in only ten of twenty-nine mandatory urinalysis tests, and all ten were negative.  In contrast, a hair follicle test in October 2013 returned a positive result for amphetamines.

¶6           Mother did not attend the DCS-recommended substance abuse classes through Arizona Families F.I.R.S.T. (Terros).  Instead, she enrolled herself in Community Bridges, a different substance abuse program.  Community Bridges diagnosed Mother with amphetamine dependency and set a plan for her to attend group meetings twice a week.  Mother attended only two of these group meetings between May 31, 2013 and June 20, 2013.  At the severance hearing, Mother explained that she did not attend more than two sessions because of the distance from her home — a two and a half hour bus ride.  Community Bridges subsequently discharged Mother with a referral to a closer substance abuse treatment program, Center for Excellence.

¶7           Mother did not follow up on the Center for Excellence referral and instead enrolled herself in a 15-week program at the Steps House for Women, a half-way house.  The half-way house is a custodial program that required daily alcohol or narcotics anonymous courses.  Although Mother considered her time at the house successful, she admittedly went on a three-day methamphetamine binge following her completion of the program.  The drug binge lead to her positive hair follicle test in October 2013.

¶8           On October 4, 2013, the goal of Mother's case plan remained family reunification with a target date of December 14, 2013.  Her case manager continued to refer Mother to parent-aide services as they were necessary to reach the goal.  Nevertheless, between August 2013 and April 2014, Mother attended only 29 of 47 supervised visitations with her children and only 9 of 17 one-on-one parenting sessions.  Due to her variable and inconsistent participation in the required services, the court changed her case plan to severance and adoption on December 23, 2013.  DCS

subsequently moved to terminate Mother's rights to both L.L. and J.L. on grounds of substance abuse and nine months' out-of-home placement.

¶9       The following year Mother continued to be inconsistent with her drug testing, missing two hair follicle tests requested by her case manager in February and March.  On February 18, 2014, Mother applied and was accepted by the Phoenix Dream Center's Sofia House, a residential "Life Recovery Program."  Around that time Mother pled guilty to theft and trafficking in stolen property in relation to her March 2013 arrest.  As part of her plea, the court required Mother to spend 120 days in jail. Accordingly, she did not reside at Sofia House from March 4 until July 2, 2014, because of her incarceration.

¶10       After Mother's release from jail, the Sofia House allowed her to reenter the program.  At that point, Mother began weekly emotional counseling sessions with a licensed counselor and substance abuse sessions led by fellow participants.  At the time of the severance hearing, Mother continued to participate in the program and was in the first "block" of four 60-day blocks of treatment.

¶11       The juvenile court held a contested severance hearing on August 26 and 27, 2014.  On September 4, 2014, the court filed a signed ruling severing Mother's parental rights to both children on the grounds of substance abuse and nine months' out-of-home placement.  The court made a number of significant findings, including the following:

  (1) "Mother is unable to discharge her parental responsibilities because of substance abuse.  Mother's history with methamphetamines dates back 10 years and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period."

  (2) "[T]here is no documentation that Mother successfully completed a drug treatment program comparable to the drug treatment program and services provided by TERROS."

  (3) "Mother has substantially neglected or willfully refused to remedy the circumstances that caused the children to be in an out-of-home placement including, but not limited to, the refusal to participate in reunification services."

¶12       Mother timely appeals the severance order.  We have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

4

**DISCUSSION**

¶13      This court reviews a juvenile court's termination order "in the light most favorable to sustaining the court's decision and will affirm it 'unless we must say as a matter of law that no one could reasonably find the evidence [supporting statutory grounds for termination] to be clear and convincing.'" *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 95, ¶ 10, 210 P.3d 1263, 1266 (App. 2009) (quoting *Murillo v. Hernandez*, 79 Ariz. 1, 9, 281 P.2d 786, 791 (1955)) (alteration in original).

¶14      Mother presents two issues for review: (1) whether the juvenile court erred in severing Mother's parental rights on the basis that she is unable to discharge her parental responsibilities due to substance abuse; and (2) whether the juvenile court erred in severing Mother's parental rights on the basis of nine months' out-of-home placement.

¶15      The juvenile court must meet two elements in order to sever parental rights under state law.  First, the juvenile court must find by clear and convincing evidence that the facts of the case fulfill at least one of the statutory grounds for termination that are enumerated in A.R.S. § 8-533(B). *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 176-77, ¶ 9, 319 P.3d 236, 238-39 (App. 2014).  Next, the juvenile court must find by a preponderance of the evidence that the termination would be in the child's best interests.  *Id.*  Mother does not challenge the court's finding that severance was in the children's best interests, and we therefore do not address that issue.

¶16      Mother's rights were severed under the substance abuse ground of A.R.S. § 8-533(B)(3) and the nine months' out-of-home placement ground of A.R.S. § 8-533(B)(8)(a).  "If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3, 53 P.3d 203, 205 (App. 2002).  Because sufficient evidence supports the juvenile court's findings on the substance abuse ground under A.R.S. § 8-533(B)(3), we need not address the out-of-home placement ground under A.R.S. § 8-533(B)(8)(a).

¶17      To terminate parental rights under A.R.S. § 8-533(B)(3), a court must find that 1) the parent has a history of chronic abuse of controlled substances; 2) the parent is unable to discharge parental responsibilities because of his or her chronic abuse of controlled substances;

and 3) there are reasonable grounds to believe that the condition will continue for a prolonged and indeterminate period. A.R.S. § 8-533(B)(3); *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 15, 231 P.3d 377, 381 (App. 2010).

**¶18** There is clear and convincing evidence to support the juvenile court's finding that Mother has a history of chronic substance abuse. A finding of "chronic" use does not require "constant" use, but rather use that has existed or continued for a long time. *Raymond F.*, 224 Ariz. at 377, ¶ 16, 231 P.3d at 381. The facts indicate that Mother used methamphetamine between roughly 1996 and 2008 and then again from 2012 until the present. During these periods her use was usually daily. This history can reasonably be found by the juvenile court to be "chronic."

**¶19** Mother contends, however, that the juvenile court erred in finding that due to her chronic abuse she is unable to discharge her responsibilities and that there are grounds to believe that the abuse will continue for a prolonged and indeterminate period. We conclude, however, that the evidence supports both of those findings. Severance under this section "does not require that the parent be found unable to discharge *any* parental responsibilities but rather that the parent be unable to discharge 'the parental responsibilities'". *Maricopa Cnty. Juvenile Action No. JS-5894*, 145 Ariz. 405, 408, 701 P.2d 1213, 1216 (App. 1985) (emphasis in original). Those responsibilities establish a flexible standard that allows the juvenile court to look at the particular circumstances of each case. *Id.* at 409, 701 P.2d at 1217.

**¶20** The circumstances here, unfortunately, indicate that Mother has been unable to lead a substance-free lifestyle and adequately care for her children. Mother claims that although she did not complete the court-instructed Terros program, she did participate in other services such as the Steps House for Women that "she believed to be stricter on her than Terros." The trial court's ruling, however, is reasonably supported by the fact that after the completion of the "strict" program, Mother went on a three-day methamphetamine binge.

**¶21** Additionally, Mother continuously neglected her mandatory urinalysis testing, completing only ten of the required twenty-nine tests during 2013. During and after this period, Mother attended only 29 of 47 supervised visitations with her children and only 9 of 17 one-on-one parenting sessions.

**¶22** Finally, Mother has failed to demonstrate that she can maintain sobriety in a non-custodial setting. Both the Steps House program and Mother's more recent Sofia House program were residential in nature. Again, immediately upon completion of the former program, Mother restarted drug use. As for the latter program, Mother was at the beginning stage of the services at the time of the severance hearing. Her late effort to remedy her situation could have been regarded by the juvenile court as "too little, too late" in support of the findings. Based on Mother's history of drug use and non-compliance with important aspects of the services provided by DCS, the juvenile court reasonably found that the evidence supporting termination was clear and convincing.

## CONCLUSION

**¶23** For the foregoing reasons, we affirm the juvenile court's order terminating Mother's parental rights to L.L. and J.L.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama