NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

DANIA E., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, C.M., *Appellees.*[1]

No. 1 CA-JV 14-0285

FILED 4-9-2015

Appeal from the Superior Court in Maricopa County
No. JD22445
The Honorable Connie Contes, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Michael F. Valenzuela
*Counsel for Appellees*

---

[1] The caption has been amended to safeguard the child's identity pursuant to Administrative Order 2013-0001.

---

## MEMORANDUM DECISION

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Patricia A. Orozco and Judge Diane M. Johnsen joined.

---

**T H U M M A**, Judge:

**¶1**        Dania E. (Mother) argues the superior court erred in terminating her parental rights to C.M. because there was no clear and convincing evidence she would be unable, in the foreseeable future, to remedy the circumstances that brought C.M. into care and the court erred in not giving her more time. Because the record supports the superior court's findings, the termination order is affirmed.

### FACTS[2] AND PROCEDURAL HISTORY

**¶2**        Mother's child C.M. was born in 2009. In August 2012, the Department of Child Safety (DCS) took C.M. into care and filed a dependency petition alleging, as to Mother, neglect of C.M. due to substance abuse and domestic violence as well as failure to protect. C.M. was found dependent as to Mother in October 2012, when Mother failed to appear for a scheduled hearing, and the court adopted a family reunification case plan at that time.

**¶3**        During the remainder of 2012, Mother minimally participated in services. Her participation then improved for a time, but later in 2013 and in 2014, her participation declined significantly. At DCS' request, in February 2014, the court changed the case plan to severance and adoption. DCS moved to terminate Mother's parental rights based on substance abuse and 15-months time-in-care. After a September 2014 adjudication, where Mother testified, the court terminated her parental rights to C.M. based on both grounds alleged. This court has jurisdiction over Mother's timely appeal pursuant to Arizona Revised Statutes (A.R.S.) sections 8-235(A), 12-

---

[2] This court views the evidence in a light most favorable to sustaining the superior court's findings. *See Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207 ¶ 2, 181 P.3d 1126, 1128 (App. 2008).

120.21(A)(1) and -2101(A)(1) and Arizona Rules of Procedure for the Juvenile Court 103–04 (2015).[3]

## DISCUSSION

### I.    The Superior Court Did Not Err In Terminating Mother's Parental Rights.

**¶4**        The superior court may grant a motion to terminate if DCS proves by clear and convincing evidence at least one statutory ground for severance in A.R.S. § 8–533(B) and proves by a preponderance of the evidence that termination is in the best interest of the child. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 42, 110 P.3d 1013, 1022 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12, 995 P.2d 682, 685 (2000). Because the superior court is in the best position to weigh and assess the evidence, including credibility and resolutions of factual disputes, an order terminating parental rights will be affirmed so long as it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18, 219 P.3d 296, 303 (App. 2009).

**¶5**        To prevail on the substance abuse ground, DCS was required to prove by clear and convincing evidence that there were "reasonable grounds to believe" that Mother's substance abuse "will continue for a prolonged indeterminate period." A.R.S. § 8-533(B)(3). Mother argues the superior court erred by finding DCS had met its burden.

**¶6**        The evidence shows Mother had a significant history of substance abuse.  She started using marijuana and then methamphetamines in her early teens. Mother admitted at trial that she had used methamphetamine consistently for several years and that her use was "pretty consistent" the week C.M. was taken into care in August 2012.

**¶7**        DCS provided Mother with various services designed to address her substance abuse. Mother's initial participation was inconsistent. For example, Mother failed to participate in substance abuse treatment in August 2012, and a referral was closed two months later. From August to November 2012, Mother missed 20 of 28 required drug tests and tested positive for amphetamines.

**¶8**        Mother's participation in services improved in the first part of 2013. However, Mother's follow up was inconsistent, she was closed out of

---

[3] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

a substance abuse aftercare program for failing to participate and her participation declined in the second part of 2013. After a third referral for further treatment in October 2013, Mother failed to participate and the referral was closed.

¶9        In 2014, Mother's participation in services further declined. She did not participate in substance abuse treatment and missed nine of twelve random drug tests. At trial, Mother admitted she relapsed in February 2014 and used methamphetamine after a visit where C.M. called her "Mommy" and did not want her to leave, something the superior court found "[p]articularly troubling." A DCS caseworker testified that during an April 2014 visit, Mother's house smelled of marijuana, which Mother attributed to someone else in the home smoking marijuana. Although Mother testified she participated in a 72-hour rehabilitation program three months after her February 2014 relapse, she also admitted using methamphetamines shortly after completing that program. The DCS caseworker testified at trial that Mother's substance abuse would continue "for a prolonged indeterminate period of time" because she failed to obtain the treatment needed to maintain sobriety.

¶10        Mother argues A.R.S. § 8-533(B)(3) does not require that she be ready, "on the very day of trial," to "resume normal parenting duties," and that she would have been sober and ready to parent "six weeks to two months" after trial. By the time of trial, however, C.M. had been in DCS' care for more than two years. During that time, and notwithstanding a substantial history of substance abuse, Mother had failed to complete substance abuse services and had relapsed with methamphetamine just months before trial. This evidence supports the superior court's ruling. *See Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 378–79 ¶¶ 26–29, 231 P.3d 377, 382–83 (App. 2010); *Jordan C.*, 223 Ariz. at 93 ¶ 18, 219 P.3d at 303.

¶11        Mother also asserts she "enthusiastically participated" in substance abuse treatment "and, for many months, tested clean." After that period, however, her participation in treatment declined, she missed a significant number of drug tests and relapsed by using methamphetamine a few months before trial, nearly two years after DCS took C.M. into care. Moreover, the court was not required to accept Mother's testimony that she had established stable housing, income, employment and participated in a support group and mentor activities. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280 ¶ 4, 53 P.3d 203, 205 (App. 2002); *see also Raymond F.*, 224 Ariz. 373, 378–79 ¶¶ 24–29, 231 P.3d 377, 382–83 (rejecting argument that clean drug test during four months before termination adjudication showed there was no evidence drug abuse was likely to continue). Accordingly,

Mother has failed to show the superior court abused its discretion in finding DCS proved by clear and convincing evidence that she had a history of chronic drug abuse and there were "reasonable grounds to believe" that her substance abuse "will continue for a prolonged indeterminate period." *See* A.R.S. § 8-533(B)(3); *Raymond F.*, 224 Ariz. at 379 ¶ 29, 231 P.3d at 383.[4]

## II.     The Superior Court Did Not Err In Denying Mother's Request For Additional Time.

¶12         Mother claims she requested a trial continuance by asking during closing argument that she be given "additional time to participate in services." Mother's request appears to be an argument that she should be given more time to participate in services, as opposed to a request to continue trial. Mother did not file a written motion to continue and there is no indication the court waived the writing requirement. *See* Ariz. R.P. Juv. Ct. 46(A). Moreover, to the extent her oral request is construed as a proper motion to continue, Mother has not shown how she set forth the grounds required for such a motion or that the superior court abused its discretion in denying such a motion. *See* Ariz. R.P. Juv. Ct. 46(F). Accordingly, Mother has not shown that the court abused its discretion in addressing this request for additional time.

## CONCLUSION

¶13         The superior court's order terminating Mother's parental rights to C.M. is affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: ama

---

[4] Because the superior court properly found this ground for severance, this court need not address the other ground for severance found by that court. *See Michael J.*, 196 Ariz. at 251 ¶ 27, 995 P.2d at 687.