NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ANGELIQUE B., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, P.B., M.S., A.S., *Appellees*.

No. 1 CA-JV 15-0011
FILED 7-30-2015

Appeal from the Superior Court in Maricopa County
No. JD22468
The Honorable Susanna C. Pineda, Judge

**AFFIRMED**

COUNSEL

Law Office of Anne M. Williams, P.C., Mesa
By Anne M. Williams
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Laura J. Huff
*Counsel for Appellee State of Arizona*

---

**MEMORANDUM DECISION**

Presiding Judge Maurice Portley delivered the decision of the Court, in which Judge John C. Gemmill and Judge Michael J. Brown joined.

---

**P O R T L E Y**, Judge:

**¶1**　　　　Angelique B. ("Mother") appeals the juvenile court's order terminating her parental rights to her three minor children, P.B., M.S., and A.S.[1]  She contends the court erred by finding that termination was in the children's best interests.  Because we discern no abuse of discretion, we affirm.

### FACTS[2] AND PROCEDURAL BACKGROUND

**¶2**　　　　The Department of Child Safety[3] received two anonymous hotline reports about Mother and her three biological children, P.B., M.S., and A.S.  The first report was made on August 3, 2012, and asserted they were living in a filthy home, filled with dog feces and urine, and they lacked adequate food.  The Department later learned that police officers went to the house that day because they suspected the occupants were selling drugs.  The second report was made a few weeks later, and described that although Mother had given M.S. and A.S. to their paternal grandmother ("Grandmother") to get them out of the inappropriate home and to keep them away from her abusive brother, Mother took them back after arguing with Grandmother.

**¶3**　　　　The Department subsequently began an investigation and discovered that Mother's boyfriend had physically abused her and the children.  The Department also learned that Mother was unemployed, had no source of income, and lacked stable housing.  The Department asked Mother to attend a team decision making meeting, but when she failed to

---

[1] Neither father is a party to this appeal.

[2] We view the facts in the light most favorable to upholding the juvenile court's ruling.  *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 376, ¶ 13, 231 P.3d 377, 380 (App. 2010).

[3] The Department of Child Safety has replaced the Arizona Department of Economic Security.  *See* S.B. 1001, 51st Leg., 2d Spec. Sess. (Ariz. 2014).  We will refer to the agency as "the Department."

attend the meeting, the children were removed from her care and a dependency petition was filed.

¶4            The juvenile court subsequently found the children dependent and set the case plan as family reunification.  Over the next two years, the Department offered Mother random drug testing, four referrals for substance abuse treatment, a parent aide, supervised visits, a psychological consultation, dialectical behavior therapy counseling, and transportation.

¶5            Mother      tested      positive      for      amphetamine      and methamphetamine in February 2013.  Although she participated in substance abuse treatment from March 2013 to August 2013, she relapsed, and in July and August 2013 tested positive for amphetamine and methamphetamine.  Mother also failed to participate in counseling and to attempt to obtain stable housing or employment.

¶6            The Department moved to change the case plan to severance and adoption at a review hearing in November 2013.  After the court granted the motion, the Department filed a motion to terminate Mother's parental rights alleging substance abuse and fifteen months out-of-home placement grounds under Arizona Revised Statutes ("A.R.S.") sections 8-533(B)(3) and (B)(8)(c).[4]

¶7            Mother, who continued to test positive for amphetamine and methamphetamine,[5] failed to appear for the termination hearing on September 12, 2014, and, despite the fact that the hearing was continued over the Department's objection until November 18, 2014, she still did not appear.[6]  The juvenile court took evidence and, at the conclusion of the hearing, terminated Mother's parental rights to the three children on the grounds alleged and found that the termination was in the children's best interests.  The court subsequently signed and filed the written findings of fact and conclusions of law based on the court's oral pronouncements.

---

[4] We cite the current versions of statutes unless otherwise noted.

[5] By the time the case plan was changed, Mother was only participating in visits with the children.

[6] Mother had notice and signed a Form 3 Notice to Parent in Termination Action, and was present when the September 12 termination hearing was scheduled.  She did not seek to excuse or explain her absence.

¶8        Mother filed a notice of appeal.  We have jurisdiction under A.R.S. §§ 8-235, 12-120.21(A)(1), and -2101(A)(1).

**DISCUSSION**

¶9        Mother argues that the juvenile court erred by finding that termination of her parental rights was in the best interests of her children.[7] We will affirm the juvenile court's ruling unless it is clearly erroneous; namely, that there is no reasonable evidence to support the factual findings upon which it is based.  *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, ¶ 4, 53 P.3d 203, 205 (App. 2002).

¶10        A best interests determination must be supported by a preponderance of the evidence.  *See Kent K. v. Bobby M.,* 210 Ariz. 279, 284, ¶ 22, 110 P.3d 1013, 1018 (2005); A.R.S. § 8-533(B).  "[A] determination of the [children's] best interest must include a finding as to how the [children] would benefit from a severance *or* be harmed by the continuation of the relationship." *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 30, 231 P.3d 377, 383 (App. 2010) (internal citations and quotation marks omitted).  The juvenile court can also consider whether: (1) an adoptive placement is immediately available; (2) the existing placement is meeting the needs of the child; and (3) the children are adoptable.  *Id.*

¶11        Mother contends that the evidence was insufficient to support a best interests finding because "[n]one of the children [were] in adoptive homes, and no adoptive homes have been identified despite the fact that the children have been in out-of-home placements for over two years."  A "specific adoption plan" is not, however, a prerequisite to termination; the juvenile court may rely on evidence that a child is adoptable and the existing placement is meeting the child's needs.  *Bobby G. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 506, 511, 200 P.3d 1003, 1008 (App. 2008).

¶12        Here, the Department presented evidence that all three children would benefit from severance and would be harmed if returned to Mother.  The case manager testified that Mother had moved three or four times during the course of the dependency, demonstrating her instability.  She further testified that Mother had had only a four-month period of sobriety over the prior twenty-seven months that the children had been in the Department's custody.  And she stated that Mother was possibly still in a relationship with the boyfriend who had abused the children and was also

[7] Because Mother does not challenge the statutory basis for terminating her parental rights, we affirm those findings.

using methamphetamine and marijuana. The case manager testified that the children were adoptable and would benefit from the termination of Mother's parental rights.

¶13        The children's guardian ad litem ("GAL") filed a report that the court considered, describing that the children were doing well in their foster placements and that their educational, medical, and dental needs were all being met. She informed the court that M.S. was in a potential permanent placement, and P.B. wanted Mother's parental rights to be terminated.[8] The GAL's report concluded by opining that permanency was in the children's best interests and it could be achieved by terminating Mother's parental rights.

¶14        The evidence, as a result, supports the juvenile court's finding that termination was in the children's best interests because "the children are adoptable" and "[t]heir needs are being met in foster homes." Therefore, the court did not err.

## CONCLUSION

¶15        For the foregoing reasons, we affirm the juvenile court's order terminating Mother's parental rights to P.B., M.S., and A.S.



Ruth A. Willingham · Clerk of the Court
FILED: RT

---

[8] An earlier report indicated that P.B. wanted to be adopted by his foster parents.