231 P.3d 377

**RAYMOND F., Appellant,**

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, Amberly F., Myra F., Appellees.**

**No. 1 CA–JV 09–0025.**

Court of Appeals of Arizona, Division 1, Department E.

May 20, 2010.

David Goldberg, Fort Collins, CO, Attorney for Appellant.

Terry Goddard, Arizona Attorney General By Kathleen Skinner, Assistant Attorney General, Phoenix, Attorneys for Appellee, Arizona Department of Economic Security.

Law Offices of Florence Bruemmer By Tanya Renee Imming, Anthem, Attorney for Children.

## OPINION

VASQUEZ, Judge.

¶1 Raymond F. ("Father") appeals the juvenile court's order terminating his parental relationship with his daughters, A.F. and

M.F.[1] We hold that there was sufficient evidence for the juvenile court to find that: 1) Father was unable to discharge his parental responsibilities because of his history of chronic drug abuse pursuant to Arizona Revised Statutes ("A.R.S.") section 8–533(B)(3) (Supp.2008); and 2) termination of his parental rights is in the best interest of his daughters. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 Father is the biological father of A.F., born in November 2002, and M.F., born in October 2005. A.F. and M.F. were residing with their mother ("Mother") on May 19, 2007 when Mother's boyfriend sexually abused A.F. Mother did not contact the police, but reported the sexual abuse to Father. Father also did not report the incident to the police. Meanwhile, Mother and the children continued to live with Mother's boyfriend. Mother filed a police report approximately five days after the incident. Though Father did not contact the police, he did cooperate with the investigation. A medical examination confirmed that A.F. had been sexually assaulted. Father was then given temporary legal custody of both girls while mother maintained supervised visitation rights.

¶ 3 According to Child Protective Services ("CPS"), Father had a history of drug abuse. Because Father had submitted to a urinalysis ("UA") and tested positive for marijuana, CPS initiated a services-only case in June 2007 to provide him with services. CPS offered him UAs, substance abuse treatment and psychological evaluation. Father completed a substance abuse program with Arizona Families F.I.R.S.T. ("F.I.R.S.T."), but he subsequently tested positive for alcohol on October 24 and November 2, 2007, and for marijuana on May 11, June 13, and June 14, 2007. Further, Arizona Department of Economic Security ("ADES") officials reported that on one occasion, when Father arrived at the ADES office, he appeared to be under the influence of alcohol, indicating he had driven with the children while intoxicated.

¶ 4 On October 20, 2007, Father allowed his alcoholic stepfather to care for the children so Father could take a nap. The stepfather drove while intoxicated with the children in the vehicle, resulting in a head-on collision.

¶ 5 Early on November 19, 2007, Father left a message with a case manager stating that M.F. had a shoulder injury that may require medical attention. Rather than take M.F. to the hospital, Father left M.F. with daycare. Later that day, M.F. was admitted to the Yavapai Regional Medical Center emergency room by a case manager because of a severely bruised and swollen shoulder. A.F. stated to several people that "Daddy pushed [M.F.] and made her fall." In a report, M.F.'s doctor stated that the injury was not accidental. The injury later resulted in four operations and a two-week hospital stay due to an infection.

¶ 6 CPS took custody of the children while M.F. was at the hospital. On November 20, 2007, Father submitted to a psychological examination where it was determined that he had a history of drug use, including alcohol, marijuana, hallucinogens, and narcotic pain medication. The psychologist stated that "[i]f this individual is continuing to use psychoactive substances at an abusive level, such use would certainly impaired [sic] his ability to fully function as [a] parent to these children."

¶ 7 In November 2007, ADES filed a dependency petition alleging the children were dependent under A.R.S. § 8–201(13)(a)(i) (Supp.2008) because Father: 1) had physically abused M.F.; 2) neglected M.F. by not taking her to the emergency room for her shoulder injury; 3) was unable to parent due to substance abuse; and 4) was unable to parent due to his failure to report A.F.'s sexual abuse and to protect his children from the head-on collision.

¶ 8 On January 4, 2008, the parties participated in a court-ordered mediation that resulted in a proposed family reunification plan. Father denied the petition but agreed

1. The mother's parental rights were terminated by the Juvenile Court on December 30, 2008, and are not at issue in this appeal.

to submit to the dependency on the record. He also agreed to participate in F.I.R.S.T., UAs, Intensive Outpatient Treatment, and parenting classes. Father also agreed to obtain stable housing and employment. CPS noted Father's slow progression and indicated that if he did not begin to comply more fully with his case plan tasks, CPS would seek to change the case plan from reunification to severance and adoption.

¶ 9 Father subsequently participated in the parent aide-services, psychological evaluation, and visitations. However, on March 31, 2008, the November 2007 physical abuse of M.F. was reported to the police. In April 2008, a no-contact order was issued denying Father visitation with M.F. Thereafter, Father never contacted CPS to inquire about the children's well-being.

¶ 10 Further, Father missed UA testing and tested positive for marijuana on January 16, January 17, and February 6, 2008, and alcohol on September 2 and September 15, 2008. He refused to enter a halfway house as recommended by his treatment providers. Father was discharged from his drug treatment after testing positive for marijuana; however, he re-entered the program after showing he had been clean for thirty days. After two more failed UAs, Father was discharged again and was terminated from treatment for the last time in October 2008 due to a failure to accept responsibility for his positive UAs.

¶ 11 On February 4, 2009, in a separate action, a jury found Father guilty of reckless child abuse for placing M.F. in a situation in which her person or health was endangered pursuant to A.R.S. §§ 13–3623(A)(2) and – 3601(A)(4) (Supp.2008). However, the jury was unable to decide whether Father had intentionally caused the injuries to M.F.

¶ 12 On February 5, 2009, ADES filed an amended petition for termination of Father's parental rights pursuant to A.R.S. § 8–533(B)(2), (3), and (8)(a). Following a contested severance hearing, the juvenile court found by clear and convincing evidence that: 1) Father is unable to discharge his parental responsibilities because of his chronic abuse of dangerous drugs and alcohol, and it reasonably believed Father's drug abuse would continue; 2) diligent efforts have been made for reunification but Father failed to remedy issues that caused the children to be in out-of-court placement; and 3) severance was in the best interest of the children, and the children were adoptable. The juvenile court issued its "Findings of Fact, Conclusions of Law, and Order" on May 28, 2009. Father timely appealed on June 2, 2009. We have jurisdiction pursuant to A.R.S. §§ 8–235 (2007), 12.120.21(A)(1) (2003), and 12–2101(A)(B) (2003).

## STANDARD OF REVIEW

 ¶ 13 "The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (App. 2002) (citation omitted). Thus, on appeal we review the juvenile court's findings of fact for clear error, *Anonymous v. Anonymous*, 25 Ariz.App. 10, 12, 540 P.2d 741, 743 (1975), and view the evidence in the light most favorable to affirming its decision. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 250, ¶ 20, 995 P.2d 682, 686 (2000) (citation omitted). We will only reverse the juvenile court's decision if there is no reasonable evidence to support its findings. *Anonymous*, 25 Ariz.App. at 12, 540 P.2d at 743.

## DISCUSSION

 ¶ 14 Father contends there was insufficient evidence to support the juvenile court's findings and conclusions on each of the statutory grounds. He also argues that the evidence does not support the court's finding that termination of parental rights was in the best interest of the children. While the court terminated Father's parental rights on a number of statutory grounds pursuant to A.R.S. § 8–533(B), we will affirm the termination if any one of the statutory grounds is proven and if the termination is in the best interest of the children. *Jesus M.*, 203 Ariz. at 280, ¶ 3, 53 P.3d at 205. We conclude that the court did not err in terminating Father's parental rights under A.R.S.

§ 8–533(B)(3) and accordingly do not address the other statutory grounds for termination.

¶ 15 To terminate parental rights under § 8–533(B)(3), a court must find that: 1) parent has a history of chronic abuse of controlled substances or alcohol; 2) parent is unable to discharge parental responsibilities because of his chronic abuse of controlled substances or alcohol; and 3) there are reasonable grounds to believe that the condition will continue for a prolonged and indeterminate period. Proof of the statutory grounds for termination must be by clear and convincing evidence. A.R.S. § 8–537(B) (2007); *Kent K. v. Bobby M.*, 210 Ariz. 279, 280, ¶ 1, 110 P.3d 1013, 1014 (2005). However, the court need only find by a preponderance of the evidence that severance is in the child's best interest. *Kent K.*, 210 at 283, ¶ 22, 110 P.3d at 1017.[2]

## I. History of Chronic Drug Abuse

¶ 16 Father claims that there was insufficient evidence to establish chronic substance abuse because he tested positive for marijuana or alcohol sporadically rather than at every UA test. Under § 8–533(B)(3), a juvenile court must find a history of "chronic" abuse of controlled substances or alcohol. Neither party offers a definition of "chronic substance abuse" nor does case law shed light on the consistency of drug abuse that is required before it is considered to be "chronic abuse." In the absence of a definition, "phrases contained in statutes are to be given their ordinary meaning...." *Maricopa County Juv. Action No. JS–5894,* 145 Ariz. 405, 408, 701 P.2d 1213, 1216 (App.1985). The Compact Edition of the Oxford English Dictionary at 409 (1971) defines chronic as "lasting a long time, long-continued, lingering, and inveterate." Likewise, inveterate indicates a condition that has existed or continued for a long time, *id.* at 1478, as opposed to being constant, which is invariable and uniform. *Id.* at 529. Thus, contrary to Fa-

ther's contention, drug abuse need not be constant to be considered chronic.

¶ 17 Father's history of drug abuse indicates an addiction that has persisted over a long period, and one that is lingering. At Father's psychological evaluation, he reported that he began using marijuana at age 12, and continued using the drug frequently from age 13 through the present. Although Father denied using marijuana recently, he tested positive for its use on May 11, June 13, and June 14, 2007. Father also began using alcohol when he was 14 and tested positive for alcohol on October 24, and November 2, 2007. He continues to drink on a regular basis despite contracting with F.I.R.S.T. to abstain from alcohol. Moreover, Father stated he used hallucinogens at age 15, and while he denied recent use of pain medication, he tested positive for narcotics on June 25, July 3, and July 25, 2007.

¶ 18 After the evaluation was completed, Father was diagnosed with Cannabis Abuse, by history. Further, Father has been diagnosed with Rule Out Alcohol Abuse and Rule Out Narcotic/Opiate Medication Abuse, indicating that Father's drug and alcohol abuse was consistent enough to require further evaluation. Thus, Father's drug abuse was consistent enough for a psychologist to diagnose him with a marijuana drug addiction, and his history reveals various addictions that persisted over a long period and that continue to linger. Thus, there is reasonable evidence to support the juvenile court's finding that there was a history of chronic drug abuse involving both marijuana and alcohol.

## II. Inability to Discharge Parental Responsibilities

¶ 19 Next, Father contends that there was insufficient evidence to demonstrate his drug use interfered with his ability to discharge parental responsibilities. Pursuant to § 8–533(B)(3), the juvenile court must find that Father's drug abuse hinders his ability to be an effective parent. However, this section

---

**2.** The court must also find that ADES made reasonable efforts to reunify the family, or that such efforts would have been futile. *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.,* 193 Ariz. 185, 191–92, ¶¶ 31–34, 971 P.2d 1046, 1052–53 (App.1999) (citation omitted). Father has not argued that

ADES did not make reasonable efforts to reunify the family; therefore, we do not address this issue. See Appellant's Brief filed June 11, 2009 and Appellant's Reply Brief filed August 18, 2009.

does not "require that the parent be found unable to discharge *any* parental responsibilities but rather that the parent be unable to discharge 'the parental responsibilities.'" *JS–5894,* 145 Ariz. at 408, ¶ 2, 701 P.2d at 1216.

¶ 20 "[T]he term 'parental responsibilities' is capable of being understood by persons of ordinary intelligence as referring to those duties or obligations which a parent has with regard to his child." *JS–5894,* 145 Ariz. at 408–09, 701 P.2d at 1213–14 (citing *Maricopa County JS–5209, JS–4963,* 143 Ariz. 178, 692 P.2d 1027, 1034 (1984)). This court has previously stated that "[t]he term is not intended to encompass any exclusive set of factors but rather to establish a standard which permits a trial judge flexibility in considering the unique circumstances of each termination case...." *Id.* 145 Ariz. at 409, 701 P.2d at 1217.

¶ 21 The record supports the juvenile court's finding that Father is unable to discharge his parental responsibilities because of chronic drug abuse. First, Father is incapable of making appropriate decisions for his children, which has severely endangered them. Father failed to contact the police when he discovered A.F. had been sexually abused, and he allowed the children to remain in the home of the man who had abused A.F. Moreover, Father allowed Mother to reside with him after the court had granted him full custody and restricted Mother to supervised visitation with the children. During this time, Father allowed M.F.'s shoulder to be severely injured, which later resulted in a life-threatening infection. Father knew of M.F.'s injury, but he did not seek medical care for her. While Father had custody of the children, he permitted them to be driven by their grandfather who was intoxicated, which resulted in a head-on car accident.

¶ 22 Second, Father's inability to protect his children from harm can be attributed to his chronic substance abuse. The psychologist that evaluated Father stated that "[i]f this individual is *continuing* to use psychoactive substances at an abusive level, such use would certainly impaired [sic] his ability to fully function as [a] parent to these children" (emphasis added). CPS case manager, Leah

M., testified that Father's substance abuse negatively affected his ability to parent because he was unable to provide a safe home for his children.

¶ 23 Collectively, the evidence was sufficient to support the juvenile court's determination that Father is incapable of discharging his parental duties and obligations with regard to his children because of his history of chronic drug and alcohol abuse.

### III. Reasonable Belief that Chronic Drug Abuse will Continue

¶ 24 Father contends that there is no evidence that his chronic drug abuse is likely to continue because he tested negative for drugs during the four months preceding the severance hearing. We disagree.

¶ 25 To support termination under § 8–533(B)(3) ADES must also prove there are reasonable grounds to believe that the condition causing an inability to parent will continue for a prolonged and indeterminate period. The Iowa Court of Appeals, in considering whether a parent would be able to overcome her drug abuse, stated that:

> We have repeatedly followed the principle that the statutory time line must be followed and children should not be forced to wait for their parent to grow up.
>
> . . .
>
> Thus, in considering the impact of drug addiction, we must consider the treatment history of the parent to gauge the likelihood the parent will be in a position to parent the child in the foreseeable future. Where the parent has been unable to rise above the addiction and experience sustained sobriety in a noncustodial setting, and establish the essential support system to maintain sobriety, there is little hope of success in parenting.

*In re N.F.,* 579 N.W.2d 338, 341 (Iowa App. 1998) (citations omitted).

¶ 26 In that case, a child was taken from Mother after Mother had tested positive for cocaine use at the child's birth. Mother was offered numerous reunification services, some of which she completed. *Id.* at 341. The court held that evidence of Mother's significant history of drug use, recent drug

use, and failure to complete various reunification services was sufficient evidence to show that her drug abuse would continue for a prolonged, indeterminate period. *Id.* The court reasoned that Mother was incapable of sustaining sobriety or "establish[ing] the essential support system to *maintain* sobriety . . ." (emphasis added). *Id.*

¶ 27 Here, Father has a substantial history of drug abuse, using a variety of drugs beginning at age 12. He tested positive three times for marijuana between January and June of 2007. Father admittedly used alcohol in November 2007, despite contracting with F.I.R.S.T. to abstain from alcohol. Further, he tested positive three times for narcotics between June and July 2007. Father also tested positive for drugs or alcohol six times between January 2008 and September 2008, which does not include a two-month period in which he did not submit to testing.

¶ 28 While Father completed some reunification services, he did not complete his substance abuse treatment. In January 2007, Father was removed from F.I.R.S.T. for missed and positive UAs. In June 2007, F.I.R.S.T. took him back into treatment; however, he never completed that treatment. In September 2008, Father was again removed from a treatment facility for positive UAs. To date, Father has not finished substance abuse treatment. Additionally, Father has not asked CPS for readmission to treatment despite CPS's warning in January 2008 that severance would be sought if Father's compliance with his case plan did not improve.

¶ 29 Father has been unable to rise above his addiction in a non-custodial and unstructured setting, similar to that in which a father would be expected to raise his children. Father's temporary abstinence from drugs and alcohol does not outweigh his significant history of abuse or his consistent inability to abstain during this case. It is not the number of times that Father has tested positive or negative for drug abuse that is key, but rather, it is the fact that he has consistently failed to *abstain* from drugs and alcohol. Father's failure to remedy his drug abuse; despite knowing the loss of his children was imminent, is evidence he has not overcome

his dependence on drugs and alcohol. "The interests in permanency for [the children] must prevail over [Father's] uncertain battle with drugs." *In re N.F.*, 579 N.W.2d at 341. The evidence is sufficient for the juvenile court to have reasonably concluded that Father's chronic drug abuse will persist for a prolonged indeterminate period and continue to negatively affect his parenting abilities.

## IV. Severance is in the Best Interest of A.F. and M.F.

¶ 30 Father contends that severance of his parental rights is not in the best interest of the children. The court must find by a preponderance of the evidence that severance is in the best interest of the child. A.R.S. § 8–533(B); *Kent K.*, 210 Ariz. at 279, 110 P.3d at 1013. "[A] determination of the [children's] best interest must include a finding as to how the [children] would benefit from a severance *or* be harmed by the continuation of the relationship." *Maricopa County Juv. Action No. JS–500274*, 167 Ariz. 1, 5, 804 P.2d 730, 734 (1990). Factors considered are whether: 1) an adoptive placement is immediately available, *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5, 982 P.2d 1290, 1291 (App.1998) (citation omitted); 2) the existing placement is meeting the needs of the child, *id.*; and 3) the children are adoptable. *See Maricopa County Juv. Action No. JS–501904*, 180 Ariz. 348, 352, ¶ 3, 884 P.2d 234, 238 (App.1994).

¶ 31 Here ADES presented evidence that both children would benefit from severance and would be harmed if returned to Father. Leah M. testified at the severance hearing that if the children remained with Father, they would be placed in an unsafe environment. Further, Leah M. testified that the children currently have a permanent and stable environment that is vital for healthy development of children this age. The children have been with their foster parents for ten months resulting in attachment to the foster family. M.F. has grown attached to the foster parents' son, and the foster parents say that the girls enjoy being in the family.

¶ 32 Adoptive placements for the children are immediately available, and the children are adoptable. Leah M. testified that the

foster parents are willing to adopt the girls, as well as Mother's sister and Father's parents. Leah M. stated that the children are available for adoption as soon as the appropriate checks on potential adoptive parents are completed.

¶ 33 Finally, the foster parents are meeting the children's needs. A.F. is attending kindergarten and a Title 9 program to catch-up to the other children in her class. A.F. is showing improvement in school and now has a stable routine. M.F. is talking more, and overall, she is happier and more outgoing. M.F. is excited to attend Head Start schooling. The foster mother reported that M.F.'s bad dreams have subsided since Father's visits ceased. This evidence is sufficient to sustain the juvenile court's decision that severance is in the best interest of the children.

### CONCLUSION

¶ 34 For the foregoing reasons, we affirm the juvenile court's termination of parental rights of Father with respect to A.F. and M.F.

CONCURRING: PHILIP HALL, Presiding Judge, and PATRICIA A. OROZCO, Judge.