NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

ALICIA M., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.H., J.N., *Appellees*.

No. 1 CA-JV 14-0213

FILED 1-22-2015

---

Appeal from the Superior Court in Maricopa County
No. JD510536
The Honorable Brian K. Ishikawa, Judge

**AFFIRMED**

---

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Cathleen E. Fuller
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge John C. Gemmill delivered the decision of the Court, in which Judge Kenton D. Jones and Judge Donn Kessler joined.

---

**G E M M I L L**, Judge:

¶1        Alicia M. ("Mother") appeals the juvenile court's order terminating her parental rights to her daughter, A.H., and son, J.N., arguing that the Department of Child Safety ("DCS")[1] failed to prove severance was in the children's best interests under A.R.S. § 8-533 (B).  For the following reasons, we affirm the court's order.

¶2        Mother is the biological parent of A.H., born in 2008, and J.N., born in 2010.   In October 2012, DCS took the children into custody after Mother was admitted to a psychiatric hospital in September 2012, having allegedly "strangled" A.H.  Prior to September, Mother reportedly had become paranoid and delusional.  Mother underwent a psychological evaluation in November.  She indicated during the evaluation that she was "diagnosed with schizophrenia and [had] auditory hallucinations in the past."  Mother also informed the psychologist that she suffers from depression, has attempted suicide, and has a history of cocaine abuse.  The psychologist diagnosed Mother with a schizoaffective disorder, for which Mother takes medication.  Mother continued to be under psychiatric care and taking medication at the time of the severance trial.

¶3        The court found the children dependent in November 2012 and ordered a case plan of reunification.  Around this time, J.N.'s biological father, James N. ("Father") moved to Arizona to reunify with J.N.  From December 2012 to March 2013, Father participated in services including parent-aide services, therapy, TASC, and TERROS.  In July, the court ordered a change in physical custody of the children to Father.

¶4        After the children were declared dependent, Mother was required to complete reunification services.  Mother, however, failed to successfully complete parent aide services.  She had regular, weekly visits

---

[1]  Child Protective Services (CPS) was formerly a division of the Arizona Department of Economic Security (ADES).  Effective May 29, 2014, the Arizona legislature repealed the statutory authorization for creation of CPS and for ADES's administration of child welfare and placement services under title 8, and the powers, duties, and purposes from those entities were transferred to the newly established DCS.  *See* 2014 Ariz. Sess. Laws 2d Spec. Sess., ch. 1, §§ 6, 20, 54.  Accordingly, DCS has been substituted for ADES in this matter.  *See* Ariz. R. Civ.App. P. 27(b).  For simplicity, our references to DCS in this decision encompass both ADES and the former CPS, as appropriate.

with A.H. and J.N. until approximately August 2013. Mother stopped visiting the children due to uncontrollable muscle spasms. She self-reported to the case worker that, due to the spasms, she was unable to care for the children. Additional services Mother participated in included TERROS, TASC, counseling, and psychological evaluation, although she failed to complete the TASC requirements.

¶5        In September 2013, the juvenile court changed Mother's case plan for both children from reunification to severance. DCS moved for termination of Mother's parental rights in October 2013, alleging Mother was unable to discharge her parental responsibilities due to mental illness that was likely to continue for an indeterminate period and that children had been in out-of-home care for nine months. DCS also alleged that severance was in the best interests of the children.

¶6        A severance hearing was held in July 2014. Mother contended termination was not in the children's best interests but did not contest the grounds for termination. Mother was present and Mother's counsel cross-examined the case worker who testified. The case worker recommended severance based on Mother's psychiatric evaluation and the case worker's belief that Mother's mental condition was serious and ongoing. The case worker also opined that the children were at risk for neglect or harm in the care of Mother. Additionally, the case worker testified that Father would adopt A.H. and that he provided the children stability.

¶7        Mother contended that a guardianship was more appropriate than severance. She asserted that despite her mental health limitations, she had managed to maintain a relationship with the children. She informed the court that she had supervised contact with the children through Father and during these contacts she neither harmed the children nor acted inappropriately towards them. She asserted that guardianship was a better option because it would allow her to maintain a relationship with the children.

¶8        The court terminated Mother's rights on the grounds of 15 months out-of-home placement and inability to discharge her parental responsibilities due to a mental illness. The court also found by a preponderance of the evidence that termination was in the best interests of the children. The court reasoned that termination would benefit the

children because they are in need of a safe and stable home and that A.H. would be adopted by J.N.'s father, James N.[2]

**¶9** Mother timely appeals the judgment of severance. We have jurisdiction in accordance under Arizona Revised Statutes ("A.R.S.") §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

**¶10** To justify termination of the parent-child relationship, the juvenile court must find (1) by clear and convincing evidence at least one of the statutory grounds set out in A.R.S. section 8–533(B) and (2) by a preponderance of the evidence that termination is in the best interests of the child. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12, 995 P.2d 682, 685 (2000). In this appeal, Mother challenges only the determination that severance was in A.H. and J.N.'s best interests. Therefore, we need not address the statutory grounds of termination.

**¶11** Whether severance is in the children's best interests is primarily a question of fact for the juvenile court to determine. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 13, 53 P.3d 203, 207 (App. 2002). We view the facts in a light most favorable to affirming trial court's findings. *Maricopa Cnty. Juv. Action No. JS–8490*, 179 Ariz. 102, 106, 876 P.2d 1137, 1141 (1994). And we will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings. *Jesus M.*, 203 Ariz. at 280, ¶ 4, 53 P.3d at 205.

**¶12** To determine whether severance is in the best interests of the child, the juvenile court must consider whether "the child would benefit from a severance or be harmed by the continuation of the relationship." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19, 83 P.3d 43, 50 (App. 2004) (quoting *Maricopa Cnty. Juv. Action No. JS–500274*, 167 Ariz. 1, 5, 804 P.2d 730, 734 (1990)). Factors to consider include whether the current placement is meeting the needs of the children and whether an adoptive placement is available or the children are adoptable. *See Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 30, 231 P.3d 377, 383 (App. 2010).

**¶13** The record supports the juvenile court's determination that severance is in the best interests of the children because the children are in

---

[2] A.H.'s biological father's parental rights were severed in October 2014 and he is not a party to this appeal.

need of a safe and stable home. In the case worker's opinion, the children were at a risk for neglect or harm in Mother's care. The DCS case worker testified that mother was diagnosed with a schizoaffective disorder, personality disorder, and antisocial disorder and the mental illness will continue for an indeterminate period of time. These mental health concerns began before the strangling incident. Mother reportedly was in a mental health facility in California in 2011 and in Arizona in 2012. Furthermore, Mother also indicated that due to her muscle spasms she is unable to care for the children.

¶14 Additionally, the case worker testified and the record shows that placement with Father is the least restrictive placement consistent with the needs of the children. Father has provided the children a safe and stable home. He completed the required services and he is willing to adopt A.H., which would place the siblings in the same home. The evidence is sufficient to sustain the juvenile court's decision that severance is in the best interests of the children.

## CONCLUSION

¶15 For the foregoing reasons, we affirm the juvenile court's decision terminating Mother's parental rights to A.H. and J.N.



Ruth A. Willingham · Clerk of the Court
FILED: ama