NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

JARRID W., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, E.W., *Appellees*.

No. 1 CA-JV 15-0156
FILED 11-24-2015

---

Appeal from the Superior Court in Maricopa County
No.  JD20824
The Honorable Kristin Hoffman, Judge
The Honorable Sally Schneider Duncan, Judge

**AFFIRMED**

---

COUNSEL

Czop Law Firm, PLLC, Higley
By Steven Czop
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Nicholas Chapman-Hushek
*Counsel for Appellees*

_____

**MEMORANDUM DECISION**

Judge John C. Gemmill delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Kent E. Cattani joined.

_____

**G E M M I L L**, Judge:

**¶1**          Jarrid W. ("Father") appeals the juvenile court's order terminating his parental rights to his son, E.W., who was born in 2007. For the following reasons, we affirm.

## BACKGROUND

**¶2**          Father and Diana M. ("Mother") are E.W.'s biological parents. Mother's parental rights were terminated in December 2014 and she is not a party to this appeal. In September 2013, the Department of Child Safety ("DCS") filed a dependency petition and the court eventually made E.W. a temporary ward of the court, committed to the legal care, custody, and control of DCS. Also in September 2013, Father was released from the Maricopa County Jail.

**¶3**          Father has a long history of drug abuse. In June 2014, he told his probation officer that he had relapsed. At the direction of his probation officer, Father checked into Crossroads, a substance abuse facility. He resided there from June 2014 to November 2014. Prior to entering Crossroads, Father was inconsistent in complying with other substance abuse programs.

**¶4**          On July 31, 2014, DCS filed a motion for termination of parent-child relationship between Father and E.W., alleging that Father was "unable to discharge his parental responsibilities because of a history of chronic abuse of dangerous drugs, controlled substances and/or alcohol." DCS further alleged that termination would serve the best interests of E.W.

**¶5**          The juvenile court held a four-day, contested trial on the motion for termination. Father testified to an extensive history of substance abuse, beginning at age twelve, and he acknowledged that his last use of controlled substances was in June 2014 immediately prior to his entering Crossroads. Dr. Mastikian, a psychologist who conducted a psychological evaluation of Father, testified about his evaluation. A second psychologist,

Dr. Silberman, who both evaluated Father and conducted a bonding assessment, testified that E.W. loves his foster family and Father and "wishes he could live with both." He also testified that E.W. would likely do well with his foster family in the event of termination. The case manager testified similarly, indicating that E.W. would have permanency and stability if adopted by E.W.'s foster parents, who would like to adopt him.

¶6 The juvenile court issued its findings of fact, conclusions of law, and order on May 15, 2015. The court found that Father had demonstrated sobriety outside of a controlled setting since leaving Crossroads in November 2014, but the court nevertheless ordered that Father's parent-child relationship with E.W. be terminated. Father timely appeals. We have jurisdiction in accordance with Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

¶7 Although the right to the custody and control of one's child is a fundamental one, it is not absolute. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11–12 (2000). To justify the termination of the parent-child relationship, the juvenile court must find at least one of the statutory grounds under A.R.S. § 8-533(B) by clear and convincing evidence. *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 329, ¶ 18 (App. 2007). The juvenile court must also find that termination of the parent-child relationship is in the best interests of the child. *Id.* We will not disturb the court's order terminating parental rights unless its factual findings are clearly erroneous and no reasonable evidence exists to support them. *Minh T. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 76, 78–79, ¶ 9 (App. 2001).

¶8 Father presents three arguments on appeal. First, he argues that the juvenile court erred in finding that he was unable to discharge parental responsibilities because of his chronic abuse of controlled substances. Second, he contends that the juvenile court erred in finding that there were reasonable grounds to believe that his substance abuse would continue for a prolonged and indeterminate period. Finally, Father asserts that the juvenile court erred in finding that termination of the parent-child relationship was in E.W.'s best interests.

## I. Inability to Discharge Parental Responsibilities

¶9 On appeal, Father concedes that "there is ample evidence in the record that Father did in fact have a history of chronic abuse of controlled substances." Nonetheless, Father argues the record does not support a finding that he is unable to discharge his parental responsibilities.

To terminate the parent-child relationship under A.R.S. § 8-533(B)(3), the juvenile court must find that the parent is unable to discharge parental responsibilities because of a history of chronic substance abuse. *See Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377–78, ¶ 19 (App. 2010).

**¶10**     "[T]he term 'parental responsibilities' is capable of being understood by persons of ordinary intelligence as referring to those duties or obligations which a parent has with regard to his child." *Maricopa Cty. Juv. Action No. JS-5894*, 145 Ariz. 405, 408–09 (App. 1985) (citing *Maricopa Cty. Juv. Action JS-5209, JS-4963*, 143 Ariz. 178, 185 (App. 1984)). "Parental responsibilities" does not refer to an exclusive set of factors but instead "establish[es] a standard which permits a trial judge flexibility in considering the unique circumstances of each termination case before determining the parent's ability to discharge his or her parental responsibilities." *See id.* at 409.

**¶11**     The record supports the juvenile court's finding that Father is unable to discharge his parental responsibilities. First, as Father concedes, he has an extensive history of substance abuse, including several arrests and periods of incarceration for crimes related to his drug use. At trial, Father also testified that he had committed approximately thirty thefts or burglaries as an adult. Father testified that he did not consistently have a place of his own to live and that he was homeless before he checked into Crossroads. The juvenile court found that he had not demonstrated a history of stable employment or housing. Father also admitted that he had relied on Mother, whose parental rights are now terminated, to care for E.W. Finally, Dr. Mastikian indicated that Father is at a high risk for dysfunctional parenting at this stage in his recovery. Collectively, therefore, reasonable evidence supports the juvenile court's determination that Father is unable to discharge his parental responsibilities.

## II.    Reasonable Grounds to Believe that Chronic Substance Abuse Will Continue

**¶12**     To support termination of the parent-child relationship under A.R.S. § 533(B)(3), the juvenile court must also find that "reasonable grounds" exist to believe that the condition causing an inability to parent will continue for a prolonged and indeterminate period. *See Raymond F.*, 224 Ariz. at 378, ¶ 25. Father argues the juvenile court erred in finding reasonable grounds to believe his substance abuse would continue for a prolonged and indeterminate period. Specifically, Father contends the juvenile court failed to give consideration to the length of his sobriety, expert testimony that he would be able to demonstrate minimally adequate

parenting skills in the foreseeable future, Father's treatment history, and how Father has overcome his addiction.

¶13 The juvenile court made various findings in support of its conclusion that there are reasonable grounds to believe Father's substance abuse will continue for a prolonged and indeterminate period. The court found that Father was required to complete both Social Accountability Guidance & Education counseling ("SAGE") and Terros treatment services, but failed to do so. Additionally, the court found that Father was non-compliant with drug testing in 2014 and relapsed in June 2014. The juvenile court also found that Father's history of substance abuse includes repeated relapses and that he is very likely to relapse in the future.

¶14 The record reasonably supports the juvenile court's findings. As Father admits, he has a long history of substance abuse. Over a period of approximately twenty years, Father has relapsed multiple times, including one relapse after a five-year period of sobriety. Father argues that the length of his current period of sobriety demonstrates that his chronic substance abuse will not be for a prolonged and indeterminate period. But the court heard testimony that it is likely that Father will relapse again. Also, Dr. Mastikian testified to the following:

> I feel like in the continuum of recovery the first year is very, very important because it's a very turbulent time in terms of sobriety; relapse rates are higher. So with it being either six months or less, I think his – his probability for relapse was very significant. So with that it would make his parenting skills and his ability to properly parent consequently, you know, less stable.

¶15 Additionally, the case manager noted the likelihood that Father would relapse, explaining that "[Father] does well for a certain amount of time and then he relapses. He does well for a certain amount of time and then he relapses or he goes into a contained area and then he does well." Further, the case manager noted that Father has had multiple opportunities in the past to engage in treatment services such as psychological evaluations, Terros, and SAGE, but has not done so.

¶16 Notably, the evidence presented at trial was conflicting and reasonable minds could differ on the result reached by the juvenile court. Although Father's recent efforts have been successful and are commendable, the court was required to take into account all of the evidence including Father's long history of drug abuse. We conclude that

sufficient evidence supports the juvenile court's conclusion that there are "reasonable grounds" to believe that Father's substance abuse will likely continue for a prolonged and indeterminate period.

## III.    Child's Best Interests

**¶17**        Finally, Father contends the juvenile court erred in finding that termination of the parent-child relationship was in E.W.'s best interests.  Specifically, Father argues the record establishes termination of the parent-child relationship may instead be detrimental to E.W.

**¶18**        To support a finding that termination is in the child's best interests, the juvenile court must find that the child would benefit from severance or be harmed by the continuation of the relationship.  *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 51, ¶ 19 (App. 2004).  For example, the best interests requirement may be satisfied if there is a current adoptive plan for the child, *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 6 (1990), or if the child is adoptable, *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994).

**¶19**        Here, the record reflects that E.W. would benefit from severance.  E.W. is adoptable and a suitable adoptive placement with his current foster family is immediately available.  Dr. Silberman testified that E.W. loves his foster family and would do well with them.  If E.W. were adopted by his foster parents, he would continue to have his medical, educational, and behavioral needs met.  The case manager also testified that E.W. would benefit from adoption because he would have permanency and stability in his adoptive home.  Finally, two of E.W.'s siblings currently reside with the same foster family, and adoption would allow the siblings to continue living together.

**¶20**        Additionally, Dr. Silberman testified that E.W. is struggling with anger issues and that continuing to hold out hope that he will be returned to Father may exacerbate those issues.  Further, at trial, the case manager was asked what harm E.W. would sustain if Father was given more time to demonstrate his ability to maintain sobriety.  In response, the case manager stated, "[E.W.] would continue to sit and wait, just like he's been for eight years."

**¶21**        This evidence is sufficient to sustain the juvenile court's decision that termination of the parent-child relationship is in E.W.'s best interests.

**CONCLUSION**

**¶22** Applying the applicable standards of appellate review to the record in this case, we discern no abuse of discretion or legal error. We therefore affirm the juvenile court's termination of Father's parental rights regarding E.W.



**Ruth A. Willingham** · Clerk of the Court
FILED: ama