NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

DIEGO G., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, N.G., *Appellees*.

No. 1 CA-JV 16-0033
FILED 7-26-16

Appeal from the Superior Court in Maricopa County
No. JD 23406
The Honorable Connie Contes, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee, Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Patricia K. Norris and Judge Maurice Portley joined.

---

**D O W N I E**, Judge:

¶1        Diego G. ("Father") appeals from an order terminating his parental rights.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        N.G. was born in December 2010.  She lived in Mexico with her mother ("Mother") and Father from the age of three months until just before her first birthday.  At that time, Mother and N.G. returned to the United States.

¶3        In March 2013, the Department of Child Safety ("DCS") removed N.G. from Mother's custody due to concerns about substance abuse and neglect.[1]  After initial unsuccessful attempts to locate Father in Mexico, DCS obtained a telephone number for him, and a Spanish-speaking parent locator spoke with Father in March 2014.  Father was given contact information for the DCS case manager, but he had no contact with the agency until May 2015.

¶4        DCS moved to terminate Father's parental rights in January 2014 on the grounds of abandonment.[2]  A severance trial occurred in November 2015.  At the time of trial, Father had not seen N.G. since December 2011.

¶5        The superior court concluded Father had abandoned N.G. and terminated his parental rights.  Father timely appealed.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-120-21(A)(1), and 12-2101(A)(1).

---

[1]        Mother's parental rights were also terminated — a decision that is not at issue in this appeal.

[2]        N.G.'s guardian *ad litem* ("GAL") subsequently substituted as the petitioner.  DCS supported the GAL's severance request at trial.

**DISCUSSION**

## I.  Abandonment

¶6          The superior court may terminate parental rights if it finds by clear and convincing evidence that a parent has abandoned his or her child. A.R.S. §§ 8-533(B)(1), -537(B).  Abandonment is defined as:

> [T]he failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision.  Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child.  Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8-531(1).

¶7          Whether a parent has abandoned a child is determined by the parent's conduct, not by subjective intent.  *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249–50, ¶ 18 (2000).  The appropriate focus is on "whether a parent has provided reasonable support, maintained regular contact, made more than minimal efforts to support and communicate with the child, and maintained a normal parental relationship."  *Id.*  Because the juvenile court is "in the best position to weigh the evidence, judge the credibility of the parties, observe the parties, and make appropriate factual findings," *Pima County Dependency Action No. 93511*, 154 Ariz. 543, 546 (App. 1987), we do not reweigh the evidence, but look only to determine if there is evidence to sustain the court's ruling. *Maricopa Cnty. Juv. Action No. JV-132905*, 186 Ariz. 607, 609 (App. 1996).  "We will not disturb the juvenile court's disposition absent an abuse of discretion or unless the court's findings of fact were clearly erroneous, i.e., there is no reasonable evidence to support them."  *Id.*

¶8          Father testified at the severance trial that N.G. had "always" lived with her maternal grandmother since returning to the United States, that he spoke with her "daily," and that he sent "a lot of money" to his parents who lived nearby — presumably for N.G.'s benefit.  The superior court, though, found Father's testimony on these points "not credible." And the DCS case manager testified that N.G. had been removed from her maternal grandmother's home for a six-month period, during which time there was no evidence of contact by Father.

**¶9**      When circumstances prevent a parent "from exercising traditional methods of bonding with his child, he must act persistently to establish the relationship however possible and must vigorously assert his legal rights to the extent necessary." *Pima Cnty. Juv. Severance Action No. S-114487*, 179 Ariz. 86, 97 (1994). Even recognizing the geographic distance and Father's inability to legally visit the United States, the record does not suggest, let alone establish, persistent acts or vigorous assertions of legal rights by Father.

**¶10**      Father participated in services DCS coordinated with its Mexican counterpart, but he did not seek legal assistance or otherwise pursue custody of N.G. This was true notwithstanding Father's knowledge for approximately two years preceding his participation in the dependency proceedings that Mother had lost custody of her children, including N.G., due to drug usage. Even after DCS arranged for regular telephonic visits between Father and N.G., Father did not consistently participate, telling the case manager at one point he was "a busy man" and that "even though he missed his daughter, his life had to go on." The case manager advised Father it was "really important that he be calling . . . on a consistent basis to find out how his daughter was doing." The case manager was also concerned that when she attempted to give Father updates on N.G.'s behavioral challenges, he was more interested in discussing whether N.G. talked about or remembered him.

**¶11**      The law places "the burden of action on the parent." *Pima Cnty. Juv. Severance Action No. S-114487*, 179 Ariz. at 98; *see also Michael J.*, 196 Ariz. at 251, ¶ 25 ("While the state may not unduly interfere with a parent's opportunity to develop a relationship with his or her child, it need not protect the mere biological link that exists if the [parent] fails to step forward." (quotation omitted)). At the time of the severance trial, Father had not seen N.G. for almost four years and had made only sporadic attempts at maintaining a relationship with her. "Under the objective measure established by statute," *Michael J.*, 196 Ariz. at 251, ¶ 24, the superior court reasonably concluded that Father abandoned N.G.

## II.      Best Interests

**¶12**      In addition to finding a statutory ground for termination, the court must also find by a preponderance of the evidence that severance is in the child's best interests. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 15 (App. 2010). In assessing best interests, the court may consider the availability of an adoptive placement, whether the current

placement meets the child's needs, and whether the child is adoptable. *Id.* at 379, ¶ 30.

¶13 The undisputed trial evidence was that N.G. is adoptable and that her current placement is willing to adopt her. The foster parents previously adopted N.G.'s two half-sisters. N.G. is bonded with her foster family and siblings.

¶14 The superior court found that terminating Father's parental rights would benefit N.G. because it would "free her for adoption, provide her with permanency and allow her to grow up with her two half-siblings in a family that is willing and able to meet her needs." The record supports these findings.

## CONCLUSION

¶15 We affirm the order terminating Father's parental rights.



Ruth A. Willingham · Clerk of the Court
F I L E D : jt