NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JENNIFER M., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, D.W., K.M., *Appellees*.

No. 1 CA-JV 16-0118
FILED 11-29-2016

Appeal from the Superior Court in Mohave County
No. B8015JD201304034
The Honorable Richard Weiss, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Nicholas Chapman-Hushek
*Counsel for Appellee, Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Margaret H. Downie delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Samuel A. Thumma joined.

---

**D O W N I E**, Judge:

**¶1** Jennifer M. ("Mother") appeals from an order terminating her parental rights. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2** Mother was arrested on an outstanding warrant in September 2013, whereupon the Department of Child Safety ("DCS") took custody of then-two-month-old D.W. At the time of her arrest, Mother had a blood alcohol concentration of 0.17 and was in violation of an order of protection. Mother denied that D.W. had special needs, though he was born with a condition that requires feeding him "through a G-tube inserted into his stomach area," and he had recently undergone a blood transfusion.

**¶3** The superior court found D.W. dependent. The initial case plan goal was family reunification. DCS provided services to Mother, including visitation and transportation, parenting skills and domestic violence classes, a psychological evaluation, drug/alcohol testing, and individual counseling. Mother denied having issues with alcohol and "completely disavowed any personal responsibility for her actions." The psychologist who evaluated Mother, though, diagnosed her with "a serious personality disorder secondary to a substance abuse disorder" and recommended "full and sustained remission [one year of being clean and sober]" before DCS ended its involvement.

**¶4** In January 2015, Mother gave birth to K.M., and DCS took custody of him because Mother "had not mitigated any of the concerns that [DCS] had concerning the removal of her other children."[1]

---

[1] Mother has an older child who was also the subject of DCS intervention, but she is not at issue in this appeal.

**¶5**        In June 2015, Mother told DCS her significant other was residing in her home three to four days per week.  This individual was a level one sex offender, and DCS advised Mother he could not be around the children and stated that if she continued that relationship, reunification could be jeopardized.  Approximately three weeks later, Mother told DCS the relationship had ended, and the agency began allowing K.M. to stay overnight in Mother's home to begin his transition back to her care.  This ended, though, when DCS learned of a shooting at Mother's residence.

**¶6**        On the day of the shooting, Mother told a police officer she went to the river with K.M. and several other individuals, where she drank alcohol.  Contrary to what she had told DCS, Mother advised the officer she had been living with her significant other for the past eight months and stated that a handgun was kept in the bedroom dresser.  Her significant other used this gun to shoot an individual who came to Mother's apartment.

**¶7**        Mother's version of events was materially different at the severance trial.  She testified to ending her romantic relationship with the significant other "sometime in June" 2015.  When he came to her home to retrieve his belongings, she said, he ended up "passed out on the couch." The next morning, before leaving for the river, she told him to be gone by the time she returned.  When she returned with K.M., though, he was still there, and the shooting occurred.  Mother also denied knowing the handgun was in the house.

**¶8**        In September 2015, the case plan changed to severance and adoption.  After a contested trial, the superior court found three statutory grounds for severing Mother's parental rights and also found that severance was in the best interests of D.W. and K.M.

**¶9**        Mother timely appealed.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

**¶10**        To terminate parental rights, the superior court must find the existence of one of the grounds enumerated in A.R.S. § 8-533(B) by clear and convincing evidence.  *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

¶11        The superior court concluded DCS had proven three statutory grounds: neglect; chronic abuse of alcohol; and, as to D.W., out-of-home placement for 15 months or longer. A.R.S. § 8-533(B)(2), (3), 8(c). Because reasonable evidence supports the chronic alcohol abuse ground as to both children, we need not address the other grounds found by the superior court. *See Jesus M.*, 203 Ariz. at 280, ¶ 3 ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.").

¶12        We view the evidence in the light most favorable to sustaining the superior court's order and will affirm that order if it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009). As relevant here, to terminate Mother's parental rights based on A.R.S. § 8-533(B)(3), DCS was required to prove by clear and convincing evidence: (1) a history of chronic abuse of alcohol; (2) Mother's inability to discharge parental responsibilities because of her chronic abuse of alcohol; and (3) "there are reasonable grounds to believe that the condition will continue for a prolonged and indeterminate period." *See Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 381, ¶ 15 (App. 2010).

¶13        Mother's alcohol use has been an issue from the outset of the dependency proceedings. D.W. was taken into custody after Mother's arrest when, as a medically fragile infant, he was left outside on a 104-degree day while Mother was "drunk." Additionally, Mother has been arrested "on numerous occasions while under the influence of alcohol," including for driving under the influence. And after DCS took custody of D.W., police officers responded to a "domestic fight" between Mother and D.W.'s maternal grandmother. Mother was intoxicated at the time.

¶14        Although Mother completed a number of services, the DCS case manager testified at trial that she continued to drink alcohol and had not taken responsibility for her actions or benefitted "from the counseling or the therapy" provided.[2] Additionally, Mother did not consistently

---

[2]        Mother argues DCS failed to provide the intensive psychotherapy recommended by the evaluating psychologist. Mother has waived this claim, though, by failing to assert it in the superior court. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178, ¶¶ 12–13 (App. 2014) (DCS's obligation to provide "appropriate reunification services" does not relieve

participate in urinalysis testing. Excluding excused absences, she missed approximately 30% of the required tests. And Mother tested positive for alcohol in January 2014, March 2014, and January 2015 (nine days after giving birth to K.M.). Her last positive test was in September 2015, after the shooting and after completing parenting classes and individual and substance abuse counseling. The evaluating psychologist diagnosed Mother with a substance abuse disorder and recommended she demonstrate one year of sobriety before resuming parenting responsibilities. At the time of the February 2016 severance trial, Mother had not achieved this goal.

¶15        Alcohol abuse "need not be constant to be considered chronic." *Raymond F.*, 224 Ariz. at 381, ¶ 16. "Where the parent has been unable to rise above the addiction and experience sustained sobriety in a noncustodial setting, and establish the essential support system to maintain sobriety, there is little hope of success in parenting." *Id.* at ¶ 25. Here, reasonable evidence supports the superior court's finding that Mother was unable to discharge her parental responsibilities because of chronic alcohol abuse — a condition likely to "continue for a prolonged indeterminate period." *See* A.R.S. § 8-533(B)(3).

¶16        The superior court also found severance to be in the children's best interests. The existence of a current adoption plan can support a best interests finding. *See Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 350, ¶ 23 (App. 2013). Other relevant factors include the current placement's ability to meet the children's needs and the negative effect(s) the statutory ground for severance has on the children. *Id.*

¶17        The superior court found that terminating Mother's parental rights "would benefit the children because it would further the plan of adoption, which would provide the children with permanence and stability. The children are residing in an adoptive placement which is meeting all of their needs." The record amply supports these findings.

---

parent of the obligation "to raise a timely objection if the parent believes services are inadequate.").

## CONCLUSION

¶18　　　　For the foregoing reasons, we affirm the order terminating Mother's parental rights to D.W. and K.M.



AMY M. WOOD • Clerk of the Court
FILED:  AA