NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SHELLY W., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, B.T., T.H., *Appellees*.

No. 1 CA-JV 21-0350
FILED 5-26-2022

Appeal from the Superior Court in Mohave County
No. B8015JD202104019
The Honorable Rick A. Williams, Judge

**AFFIRMED**

COUNSEL

Your AZ Lawyer, Phoenix
By Robert Ian Casey
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By James William Rappaport
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Michael J. Brown joined.

---

**C R U Z**, Judge:

¶1        Shelly W. ("Mother") appeals the superior court's order terminating her parental rights to her children, B.T. and T.H.  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        B.T. was born in 2010 and T.H. was born in 2014.  Timothy H. ("Father") is the biological father of T.H.  In 2019, the Department of Child Safety ("DCS") received a report that Father sexually abused a nine-year-old child who was staying with Mother and Father.[1]  In addition to reporting the sexual abuse, the child disclosed that Father walked around the house naked and had exposed his penis to all of the children in the home.

¶3        DCS investigated and learned that Mother had a history with child protective services in Nevada relating to an older child.  That child was removed from Mother's care after she admitted to covering his mouth and nose to make him stop crying and go to sleep.  Distraught by the child's removal, Mother set her apartment building on fire and spent several years in prison as a result.  Mother also pled guilty to felony abuse, neglect, or endangerment of a child.

¶4        DCS also learned that Father had been investigated for third-degree criminal sexual contact with a nine-year-old girl in New Mexico in 2010.  DCS discovered that Mother had been medicating B.T. and T.H. unnecessarily to make them sleep.  Although Mother claimed that she gave T.H. medication because she had allergies, an allergy specialist who examined T.H. determined that she did not have any allergies.

---

[1]    Father was eventually charged with three felony counts of child molestation and was awaiting trial at the time of the termination adjudication hearing.  His parental rights to T.H. were terminated and he is not a party to this appeal.

¶5 After Mother and Father failed to adequately participate in in-home services, DCS removed the children and filed a dependency petition. The superior court found the children were dependent in 2019 and adopted a case plan of family reunification.

¶6 Mother began participating in reunification services and moved out of Father's house. DCS returned the children to Mother's care in July 2020. At that time, she was living with her mother. Thereafter, Mother took the children to Father's house for visits in violation of the case plan and told the children not to tell the DCS case manager.

¶7 Mother filed a case in family court and requested sole legal decision-making as to T.H. with supervised parenting time for Father, and moved to dismiss the dependency as to both children. Mother told DCS that she was no longer in a relationship with Father and did not plan to live with him again. Mother assured the court that she had no intention of allowing the children to have unsupervised visitation with Father. The superior court dismissed the dependency over DCS's objection in February 2021. Two days later Mother and Father told the family court they wanted to dismiss the family court case.

¶8 Three days after the dependency was dismissed, DCS received a report that Mother had moved herself and the children back in with Father. In addition, DCS learned that Mother had unenrolled B.T. and T.H. from services at Southwest Behavioral Health, had failed to ensure B.T. was taking his ADHD medication, and had knowingly made false entries in B.T.'s medication log.

¶9 DCS again filed a dependency petition and both children were found dependent as to Mother after she pled no contest to the allegations in the petition. In April 2021, DCS petitioned to terminate Mother's parental rights pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(2) (failure to protect a child from abuse) and (B)(11) (second removal within eighteen months of return to parent). DCS later withdrew the § 8-533(B)(2) allegation.

¶10 After the termination adjudication hearing, the superior court terminated Mother's parental rights on the § 8-533(B)(11) ground. The court also found that termination was in the children's best interests. Mother timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1).

**DISCUSSION**

¶11            Mother raises one issue on appeal: whether sufficient evidence supported the superior court's determination that termination of her parental rights was in the children's best interests.

¶12            "We will affirm a termination order unless the juvenile court abuses its discretion or the court's findings are not supported by reasonable evidence." *Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 474, ¶ 14 (2022). We view the facts in the light most favorable to sustaining the superior court's ruling. *Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 82, ¶ 13 (App. 2005). We do not reweigh the evidence, because the superior court "as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). The superior court may terminate a parent-child relationship if DCS proves by clear and convincing evidence at least one of the statutory grounds set forth in A.R.S. § 8-533(B). *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). The court must also find by a preponderance of the evidence that termination is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).

¶13            "[O]nce the juvenile court finds [a] parent unfit due to the existence of at least one ground listed in § 8-533(B), the parent's continuing interests in the care and custody of the child become less important than the child's best interests." *Timothy B.*, 252 Ariz. at 478, ¶ 30. "[T]he court must balance [the] diluted parental interest against the independent and often adverse interests of the child in a safe and stable home life." *Kent K.*, 210 Ariz. at 286, ¶ 35. Termination is in a child's best interests if the child would benefit from termination or be harmed by continuation of the parent-child relationship. *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). Relevant factors may include whether the child's existing placement is meeting the child's needs and whether the child is adoptable. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 30 (App. 2010). Courts must consider the totality of the circumstances existing at the time of the best-interests inquiry. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150-51, ¶ 13 (2018).

¶14            Mother argues that termination was not in the children's best interests because the children were traumatized by the DCS case, the children have "complex diagnoses that will require treatment for the foreseeable future," the children wished to be returned to Mother and were

bonded with her, the children did not want to be adopted, and the children were in a non-adoptive placement.

¶15 The superior court found that termination of Mother's parental rights was in the best interests of the children because it would make them both safe from potential neglect and sexual abuse. The court found that Mother had remained in a committed relationship with Father despite "compelling evidence," including the results of his sexual behavior risk assessment and that he posed a safety risk to the children. The court also found that Mother "generally show[ed] no insight regarding the seriousness of the allegations [against Father] or how allowing Father to have contact with the children places them at risk of abuse." It further found that continuing the parent-child relationship would be detrimental to B.T. because Mother had neglected B.T.'s medical needs by failing to properly manage his ADHD. The court also found that the children were adoptable.

¶16 Viewing the record in the light most favorable to upholding the court's best-interests finding, we conclude that sufficient evidence supports the finding. At trial, Mother testified that she was still in a romantic relationship with Father. The DCS case manager testified that both children were adoptable, and they were placed together in a foster home that was meeting their needs. Further, B.T.'s adult sister was interested in adopting him and DCS had initiated Interstate Compact on the Placement of Children proceedings to explore that placement option. Although DCS had not yet identified an adoptive placement for T.H., it had recruiters available to help find an adoptive home in the event Mother's parental rights were terminated.

¶17 Without citation to the record, Mother asserts that the children did not want to be adopted. However, during closing arguments the children's attorney informed the court that although the children did not want the court to terminate Mother's parental rights, they were "open" to the possibility of adoption if the court did terminate her parental rights. And although the children had a bonded relationship with Mother, the existence of a bond is not dispositive. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 12 (App. 2016). "Even in the face of such a bond, the juvenile court is required to evaluate the totality of circumstances and determine whether severance is in the best interests of the children." *Id.* at 99, ¶ 12. Here, the superior court considered the totality of the circumstances, which included the children's diagnoses and their bond with Mother before making its best-interests determination. The superior court determined that failure to terminate the parent-child relationship

would place the children at risk of continued abuse or neglect. Because reasonable evidence supports the court's best-interests finding, we affirm.

**CONCLUSION**

¶18        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA