NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

MATTHEW D., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, L.D., *Appellees*.

No. 1 CA-JV 17-0372
FILED 1-30-2018

---

Appeal from the Superior Court in Maricopa County
No. JD30985
The Honorable Nicolas B. Hoskins, Judge *Pro Tempore*

**AFFIRMED**

---

COUNSEL

Law Office of Robert D. Rosanelli, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Michelle R. Nimmo
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge Paul J. McMurdie joined.

---

**W I N T H R O P**, Presiding Judge:

**¶1**        Matthew D. ("Father") appeals the juvenile court's order terminating his parental rights to L.D.  Father contends there was insufficient evidence to terminate his parental rights due to chronic, and likely persisting, drug abuse and due to his alleged failure to remedy the circumstances which caused L.D. to remain in an out-of-home placement for fifteen months.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**        Father is the biological parent of L.D., born in 2015.[1]  At birth, L.D. tested positive for methamphetamine and THC and was hospitalized with withdrawal-related symptoms.  The Department of Child Safety ("DCS") immediately took custody of L.D. and placed him in foster care where he has remained.

**¶3**        In July 2015, Father tested positive for methamphetamine. DCS subsequently filed a dependency petition, alleging L.D. was dependent as to Father on the ground of substance abuse.  Father contested the dependency, but the juvenile court granted DCS' petition, finding L.D. dependent as to Father.  DCS then established a case plan for family reunification concurrent with an alternative plan for termination and adoption. In order to reunify with L.D., Father was required to demonstrate sobriety, stability, and effective parenting skills.[2]  Following the dependency hearing, Father tested negative for controlled substances on

---

[1]        Mother's parental rights were terminated concurrently with Father's; however, she is not a party to this appeal.

[2]        To help Father accomplish these goals, DCS offered the following services: parent aide after 30 days sobriety; parenting classes; substance abuse assessment/treatment through TERROS; substance abuse testing and urinalysis; and domestic violence counseling.

numerous urinalysis tests. However, before Father could continue DCS services, he was sentenced to six months in prison stemming from his drug-related arrest in March 2015.[3]

**¶4**      While in prison Father participated in numerous rehabilitation and self-improvement programs. In December 2015, Father completed a Maricopa Workforce Connections Employability Skills Workshop. Additionally, Father obtained certificates for his successful participation in domestic violence training, ALPHA Program for criminal behavior modification and substance abuse, Thinking for a Change, Pre-ALPHA anger management, and ALPHA parenting training. After being released from prison, however, Father was unable to remain sober and relapsed in August 2016. Father then attended a 45-day drug treatment program at Chicanos Por La Causa, but relapsed after completion of the program in spring 2017.

**¶5**      In September 2016, DCS moved to terminate Father's parental rights pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533 (2016). First, DCS alleged Father abandoned L.D. and failed to provide L.D. with reasonable support, regular contact, and normal parental supervision. *See* A.R.S. § 8-533(B)(1). Second, DCS alleged Father failed "to discharge [his] parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol and [because] there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." A.R.S. § 8-533(B)(3). Third, DCS moved to terminate Father's parental rights because L.D. had been in an out-of-home placement for a period of six months and Father had "substantially neglected or willfully refused to remedy the circumstances that cause[d] the child to be in an out-of-home placement." A.R.S. § 8-533(B)(8)(b). DCS further alleged termination would be in L.D.'s best interest because it would provide L.D. with permanency and stability.

**¶6**      Father contested the termination and a two-day evidentiary hearing was held in July 2017. At the hearing, Father acknowledged that he struggled with substance abuse and admitted to using methamphetamine for over ten years. Father further acknowledged that, in general, parents make bad decisions while under the influence of drugs, but testified that he is working on his substance dependency, and provided proof of the services he engaged in while incarcerated. Additionally, Father

---

[3]      Additionally, in 2014, Father was convicted of possession of methamphetamine and placed on probation.

testified that his participation and completion in a 60-day inpatient drug treatment program, which he completed only a couple days before the termination hearing, would allow him to stay sober because he had maintained sobriety for a longer period; thus, he is better equipped to maintain sober living in the future. Father further testified that he plans to continue his sobriety by moving into the Garfield house, a sober living home, for four months. In the meantime, he has taken steps to secure employment by obtaining his food handler's license.

¶7        The DCS case supervisor testified that Father's participation in services had been inconsistent throughout the case; she recognized, however, that Father was unable to participate in the referred services while incarcerated. The case supervisor further testified that although Father alleged he was searching for employment, he had not provided employment verification or housing information to DCS. In addition, the DCS case manager testified that it was unlikely Father would maintain sobriety due to his history of chronic substance abuse and repetitive failure to maintain sobriety after engaging in substance abuse treatment programs in the past.

¶8        The juvenile court took the matter under advisement, and subsequently terminated Father's parental rights on the grounds of prolonged substance abuse, pursuant to A.R.S. § 8-533(B)(3), and out-of-home placement for a period of fifteen months, pursuant to A.R.S. § 8-533(B)(8)(c).[4] In terminating Father's rights on the basis of prolonged substance abuse, the court found that "Father's participation in inpatient drug treatment came as a consequence of his failure to comply with probation terms . . . [he] did not seek out this treatment affirmatively." The court further found it was in L.D.'s best interest to terminate Father's parental rights because L.D. was in an adoptive placement and had no reasonable prospect of reunifying with Father in the near future.

¶9        Father timely appealed, and we have jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9; A.R.S. § 8-235(A) (2014); and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

---

[4]        The juvenile court found DCS did not meet its burden of proof to terminate Father's rights based on abandonment or out-of-home placement for six months.

**ANALYSIS**

¶10 On appeal, Father argues the juvenile court erred in finding he was unable to discharge his parental responsibilities because of a history of substance abuse and that there was insufficient evidence to find his past substance abuse was a condition that would continue for a prolonged indeterminate period.

¶11 We view the evidence in the light most favorable to sustaining the juvenile court's order and will overturn the court's findings only if they were clearly erroneous, meaning not supported by reasonable evidence. *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2 (App. 1998). *See also Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002) ("The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." (citation omitted)). Although parents have a fundamental right to raise their children as they see fit, that right is not without limitation. *Minh T. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 76, 79, ¶ 14 (App. 2001). To terminate this fundamental right, the juvenile court must determine by clear and convincing evidence that one of the statutory grounds for termination exists, and by a preponderance of the evidence that termination is in the best interest of the child. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000).

¶12 As relevant here, a juvenile court may terminate a parent's rights if it finds by clear and convincing evidence "[t]hat the parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." A.R.S. § 8-533(B)(3). To find a parent has a history of "chronic" abuse of dangerous drugs, the drug usage need not be constant, but must be long lasting. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 16 (App. 2010). Periods of temporary abstinence from drugs are insufficient to outweigh a parent's significant history of abuse. *Id.* at 379, ¶ 29. Further, a child's interest in permanency prevails over a parent's uncertain battle with addiction. *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 17 (App. 2016).

¶13 Contrary to Father's assertions, reasonable evidence supports the juvenile court's findings. The record reflects that Father has struggled to maintain sobriety for over ten years, even with the help of multiple substance abuse treatment programs. In addition, Father has serial criminal

convictions stemming from his drug use. Although Father has participated in numerous treatment programs, he has not demonstrated sustained success in sobriety. After his release from prison in March 2016, Father relapsed. He then attended a 45-day inpatient drug treatment program, and relapsed again. Before the termination hearing, Father had just completed another inpatient substance abuse program, which he alleges will allow him to finally overcome his substance dependency. In terminating Father's parental rights, the juvenile court found that Father attended inpatient treatment programs largely as a result of his failure to comply with probation terms, not as an affirmative decision to overcome his substance abuse. We cannot say, on this record, that the court abused its discretion in terminating Father's parental rights based on his history of substance abuse and the likelihood that his substance dependency would continue.

¶14         Father also argues the juvenile court relied on insufficient evidence to terminate his parental rights pursuant to A.R.S. § 8-533(B)(8)(c), arguing he remedied the circumstances which caused L.D. to be in an out-of-home placement. In support, Father reiterates the arguments he raised to contest termination pursuant to A.R.S. § 8-533(B)(3)—that his recent and presumably successful participation in a substance abuse treatment program will allow him to maintain sobriety. We, however, need not address this argument because there is sufficient evidence to affirm the court's termination pursuant to A.R.S. § 8-533(B)(3). *See Raymond F.*, 224 Ariz. at 376, ¶ 14 (finding we will affirm a termination of parental rights if "any one of the statutory grounds is proven and if the termination is in the best interest of the child[]" (citing *Jesus M.*, 203 Ariz. at 280, ¶ 2)).

¶15         Father does not challenge the juvenile court's finding that termination was in L.D.'s best interest. Nonetheless, we note the record supports the finding. The court found L.D. is in an adoptive placement and will benefit from the permanency that foster care provides, especially because there is no evidence that family reunification will occur in the near future.

## CONCLUSION

¶16 The juvenile court's order terminating Father's rights to L.D. is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA