NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

DARRELL S., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, S.S., E.S., *Appellees*.

No. 1 CA-JV 19-0148
FILED 10-24-2019

Appeal from the Superior Court in Maricopa County
No. JD34784
The Honorable Karen A. Mullins, Judge

**AFFIRMED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Sandra L. Nahigian
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Kent E. Cattani joined.

---

**W I N T H R O P**, Judge:

¶1        Darrell S. ("Father") appeals the juvenile court's termination of his parental rights to S.S. and E.S. (collectively "the children"). For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        The Department of Child Safety ("DCS") brought the children into care in August 2017, after police were called because Father was lying on his living room floor screaming that he had been stabbed. The police determined that Father was not injured and was hallucinating due to methamphetamine use. Both children were in the home and in Father's sole care at the time of the incident. Mother's whereabouts at the time were unknown.[1]

¶3        The next day, Father admitted to DCS that he used methamphetamine to cope with stress. He agreed that it would be best for the children to be cared for by a family member, and they were placed with maternal grandparents. The children were found to be dependent in September 2017.

¶4        Father did an initial intake and drug test through TERROS but failed to maintain contact and was closed out of all services. He did not contact DCS again until March 2018. In April 2018, he did another intake with TERROS and he began drug testing. In June 2018, Father met with a psychologist, Dr. Jones, for an evaluation. During the evaluation, Father stated that he had not used drugs since August 2017, and that the incident in which the police were called was not caused by drugs. Dr. Jones diagnosed Father with stimulant use disorder, alcohol use disorder, and child neglect and indicated that Father's prognosis was good "based on him staying engaged in services and having negative drug tests and obtaining

---

[1]        Mother's rights to the children were also terminated; she is not a party to this appeal.

stable housing." The day after his evaluation, however, Father was arrested for refusing to leave a Walmart after having a verbal altercation with a store employee. Father was extremely intoxicated at the time and had crashed his motorcycle prior to arriving at the Walmart.

¶5 After the arrest, Father stopped participating in services and was again closed out of services. DCS was unable to contact Father until October 2018, at which time he asked to relinquish his parental rights. Around that same time, Father self-referred to TERROS for individual counseling with Jessica Jouas, and began drug testing. Although every drug test Father submitted since reengaging in services was negative, he missed multiple tests every month and had diluted tests. In January 2019, the case plan was changed to severance and adoption.

¶6 After a two-day evidentiary hearing, the court found that although Father was participating in drug testing, it had only been for a few months and only after the case plan was changed. The court additionally found that although his recorded drug tests were negative, he had failed to call in for testing a "significant number of days," and thus Father could have still been using drugs and just avoided detection. The court further found that Father was not a credible or accurate reporter of his drug use as he had repeatedly misrepresented his drug use to the court and his drug counselors. The court terminated Father's parental rights on both the drug use and time-in-care grounds pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(3), (8)(a),(c). This appeal followed.

## ANALYSIS

¶7 A parent's right to custody and control of his own child, while fundamental, is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). Severance of a parental relationship may be warranted where the state proves one of A.R.S. § 8-533's statutory grounds for termination by "clear and convincing evidence." *Id.* at 248-49, ¶ 12; A.R.S. § 8-863(B). "Clear and convincing" means the grounds for termination are "highly probable or reasonably certain." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284-85, ¶ 25 (2005). Under A.R.S. § 8-533(B)(3), a parent's rights to their child may be terminated if the court finds that a parent is unable to discharge their "parental responsibilities because of . . . chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." Additionally, the court must also determine what is in the best interests of the child by a preponderance of the evidence. *Id.* at 283-84, ¶¶ 17, 22.

*I.      Statutory Grounds*

**¶8**          "[W]e will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a severance order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). We do not reweigh the evidence, but "look only to determine if there is evidence to sustain the court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

**¶9**          On appeal, Father argues the juvenile court abused its discretion by terminating his parental rights based on the substance abuse ground because both Dr. Jones and Ms. Jouas opined that his prognosis for sobriety was good and therefore there were not reasonable grounds to believe the condition would continue for a prolonged indeterminate period. Those opinions, however, were based on Father's unreliable and inaccurate self-reporting.

**¶10**          Ms. Jouas' opinion was based on Father's statement that he was compliant with his drug testing, which the record shows he was not. Also, Dr. Jones' evaluation was based on Father's statement that he had been drug free for ten months, and that the hallucination incident was not caused by drug use but exhaustion. The record shows both those statements are not true. Father admitted to using methamphetamine at the time of the hallucination incident, and he tested positive for alcohol, cocaine, and methamphetamine in September 2017. He also admitted to using methamphetamine in February 2018, during his second TERROS intake evaluation.

**¶11**          Additionally, Dr. Jones' report specifically stated that Father's prognosis was good as long as he continued to participate in the services provided by DCS, and maintained his sobriety. Father failed to meet the minimum requirements set forth by Dr. Jones. He was arrested the day after the evaluation after crashing on a motorcycle while seriously intoxicated, then failed to participate in any services or maintain contact with DCS for four months. When Father did make contact, it was to inquire about relinquishing his parental rights.

**¶12**          In summary, both therapists based their opinions on information they received directly from Father, who was not honest with them. Indeed, the court specifically found that Father was not a credible or accurate reporter of his drug use and that the record reflected a history of drug use that was likely to continue for a prolonged and indeterminate

period of time. Because the evidence supports the court's decision to terminate Father's parental relationship, we affirm.[2]

> ## II. *Best Interests*

**¶13** Father also argues that the juvenile court erred in finding that severance was in the best interests of the children. Severance is in the children's best interests if they would benefit from severance or be harmed by continuation of the parent-child relationship. *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). Relevant factors include whether the child's existing placement is meeting the child's needs, whether the child is adoptable, and whether an adoptive placement is immediately available. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379-80 ¶¶ 30-33 (App. 2010).

**¶14** In this instance, the children were placed with maternal grandparents who were meeting their needs and expressed a willingness to adopt. The case manager testified that severance and adoption were in the children's best interests because they needed permanency and they were adoptable even if grandparents were unable to do so. As such, the evidence supports the court's determination that severance and adoption were in the children's best interests.

## CONCLUSION

**¶15** For the foregoing reasons, we affirm the juvenile court's termination of Father's parental relationship.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[2] Because we affirm on the substance abuse ground, we need not consider whether the juvenile court's findings justified severance based on the time-in-care ground pursuant to A.R.S. § 8-533(B)(8)(a) and (c). *See Michael J.*, 196 Ariz. at 251, ¶ 27.