NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STELLA H., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.H., J.M., J.M., *Appellees*.

No. 1 CA-JV 22-0130
FILED 12-6-2022

Appeal from the Superior Court in Maricopa County
No. JD509033
The Honorable Jeffrey A. Rueter, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate Office, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Co-Counsel for Appellee Department of Child Safety*

The Huff Law Firm PLLC, Tucson
By Daniel R. Huff, Laura J. Huff
*Co-Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge James B. Morse Jr. and Judge Michael J. Brown joined.

---

**P E R K I N S**, Judge:

Stella H. ("Mother") appeals the juvenile court's order terminating her parental rights to three of her children. The children's fathers are not parties to this appeal. For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶1 Mother has six biological children, three of whom are parties in this appeal: Matthew, born in 2016; and twins, Linette and Dallas, born in 2017. We use pseudonyms to protect the children's identities. The juvenile court previously terminated Mother's parental rights to her three eldest children based on her inability to remedy her chronic substance abuse.

¶2 Mother has a 30-year history of substance abuse, including use of alcohol at age 10 and methamphetamine at 18. In August 2016, Mother gave birth to Matthew and both tested positive for amphetamines. The Department of Child Services ("DCS") took custody of Matthew and filed a dependency petition. DCS placed Matthew in a foster home with his older brother, who is not a party in this appeal.

¶3 DCS provided Mother with services to reunify her with Matthew, including substance-abuse treatment, parent-aide services, and transportation. Mother failed to complete substance-abuse treatment or parent-aide services, continued to abuse substances, and did not have stable housing or employment. Mother failed to complete many drug tests and, in January 2022, submitted a urine sample that did not contain human urine. DCS continued to provide reunification services to Mother for Matthew, including unsupervised visits with him.

¶4 In October 2017, Mother gave birth to twins Linette and Dallas. Dallas is medically fragile. In January 2019, DCS took custody of Linette and Dallas after learning that Mother and the twins' father were abusing substances, engaging in domestic violence, failing to provide Dallas medical care, and, for a substantial amount of time, not directly

caring for Linette. DCS placed Linette in kinship care and Dallas in a group home for medically fragile children.

**¶5** DCS filed a dependency petition for both Linette and Dallas. Mother pleaded no contest to the petition, and the court adjudicated the children dependent. Mother failed to participate successfully in the rehabilitative services DCS offered her.

**¶6** In May 2019, DCS moved to terminate Mother's parental rights to Matthew. Later that year, Mother relapsed and tested positive for methamphetamine several times. In November 2019, DCS amended its motion to also terminate Mother's parental rights to Linette and Dallas.

**¶7** While Mother sporadically attended counseling throughout 2020, she completed six months of recovery maintenance by March 2021. But in April 2021, Mother refused to submit a drug test to demonstrate long-term sobriety.

**¶8** The juvenile court held termination hearings between December 2021 and April 2022. At the time of the trial, Mother had not submitted to drug testing for several months, and her sobriety was unknown. Mother also did not have safe housing for the children, was unemployed, and was not financially independent. DCS testified that the children's placements continue to meet all their needs. Matthew's and Linette's placements intend to proceed to adoption, and Linette's placement is potentially willing to adopt Dallas.

**¶9** In May 2022, the juvenile court terminated Mother's parental rights as to Matthew, Linette, and Dallas, finding both chronic substance abuse and 15-month time-in-care statutory grounds, and that termination was in the children's best interests. Mother timely appealed, and we have jurisdiction under A.R.S. §§ 8-235(A) and 12-120.21(A)(1).

## DISCUSSION

**¶10** We review the termination of parental rights for an abuse of discretion. *Titus S. v. Dep't of Child Safety*, 244 Ariz. 365, 369, ¶ 15 (App. 2018). We will uphold the court's findings of fact "if supported by adequate evidence in the record." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 452, ¶ 19 (App. 2007) (citation omitted).

## I.    Statutory Ground

**¶11**         To terminate the parent-child relationship, the juvenile court must find parental unfitness based on at least one statutory ground under A.R.S. § 8-533(B) by clear and convincing evidence. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). On appeal, due process requires us to assess whether a reasonable factfinder could conclude, based on the record, that the state has met its clear and convincing evidentiary burden to sustain the termination of parental rights. *See Santosky v. Kramer*, 455 U.S. 745, 747–48, 769 (1982).

**¶12**         Mother argues that DCS failed to make diligent efforts to reunify her with her children because she was only offered virtual, rather than in-person visitation, she was not trained to care for Dallas' medical needs, DCS did not "adequately address the children's behavioral issues," and required excessive drug testing. But for five years, DCS offered Mother substance-abuse services, counseling services, transportation, a psychological evaluation, drug testing, and parent aide services.

**¶13**         DCS is not required to provide "every conceivable service" to a parent, but it must provide "the time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994), *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 37 (App. 1999). Even if Mother is correct that the constitution requires reunification efforts, DCS sufficiently met that requirement here. Throughout the time of service, Mother missed counseling sessions, substance-abuse services, and visitation. The record contains clear and convincing evidence that DCS made diligent reunification efforts. We find no abuse of discretion.

**¶14**         For termination based on prolonged substance abuse, DCS must offer clear and convincing evidence that Mother (1) has a "history of chronic abuse of controlled substances," (2) cannot discharge parental responsibilities because of her chronic substance abuse, and (3) "there are reasonable grounds to believe that [her] condition will continue for a prolonged and indeterminate period." *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 15 (App. 2010).

**¶15**         The record shows that Mother has abused substances since her teen years. The juvenile court found Mother had unstable employment and housing due to her substance abuse. DCS provided Mother with numerous substance abuse treatment referrals and testing. Mother often failed to complete drug tests during DCS services. As recently as January

2022, Mother submitted a urine sample that was not human urine, showing her continued battle with substance abuse. *See id*. at 379, ¶ 27 (noting parent's failure to submit to drug testing for two months among evidence of ongoing substance abuse); *see also Serah E. v. Dep't of Child Safety*, 2019 WL 6320425, at *4–5, ¶¶ 21–23 (Ariz. App. Nov. 26, 2019) (mem. decision) (noting cheating on drug tests as evidence that a parent had not remedied substance-abuse problems). Clear and convincing evidence supports the juvenile court's conclusion that Mother has a history of substance abuse, the substance abuse prevents her from parenting effectively, and there is a reasonable belief that Mother's substance abuse challenges will continue.

## II. Best Interests

**¶16** Mother also challenges the court's best interests finding. "[A] determination of the child's best interest must include a finding as to how the child would benefit from a severance or be harmed by the continuation of the relationship." *Titus S.*, 244 Ariz. at 369, ¶ 17 (quoting *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990)). Courts may consider a "child's adoptability and the parent's rehabilitation." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018).

**¶17** The juvenile court considered both the children's adoptability and Mother's rehabilitation and found the termination of Mother's parental rights would benefit the children. Dallas' current placement provides for his medical needs. All children have potentially adoptive placements that are free from substance abuse and domestic violence, provide for their needs, and would maintain sibling relationships. The record also shows the potential harm of a continued relationship with Mother. The juvenile court noted concerns about her sobriety and history of domestic violence, as well as her unemployment and lack of stable housing for the children. Reasonable evidence supports the juvenile court's conclusion that termination is in the best interests of the children.

### CONCLUSION

**¶18** We affirm.

